ROBERT D. STECKER AND DORA STECKER, PETITIONER, v. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

ROBERT D. STECKER, PETITIONER, v. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

DORA STECKER, PETITIONER, v. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 62534, 64724, 64726.   Filed January 21, 1959.

*Wentworth T. Durant, Esq.*, for the petitioners.
*Edward J. Eagleton, Esq.*, and *Allen T. Akin, Esq.*, for the respondent.

OPINION.

RAUM, *Judge:* The respondent determined the following deficiencies in income tax:

| Petitioners | Year | Amount |
| --- | --- | --- |
| Robert D. Stecker and Dora Stecker | 1952 | $8,521.22 |
| Robert D. Stecker | 1953 | 3,499.69 |
| Dora Stecker | 1953 | 4,118.54 |

The sole issue for decision is whether Robert D. Stecker (hereinafter referred to as the petitioner) is entitled to deductions in 1952 and 1953 for payments made to his former wife, Rose Gimbel Stecker, pursuant to a predivorce agreement which provided for a lump sum to be paid over a period of less than 10 years.  All of the facts have been stipulated.

The petitioners, husband and wife, filed their income tax returns for the taxable years with the district director of internal revenue, Dallas, Texas.

Petitioner married Rose Gimbel Stecker on February 1, 1923.   On November 15, 1951, they entered into an agreement incident to divorce proceedings which culminated in a decree, entered on November 28, 1951, by the Superior Court of Cook County, Illinois, dissolving their marriage.

In paragraph 2 of the agreement petitioner agreed to pay Rose Gimbel Stecker "as a lump sum settlement in lieu of alimony and in full of property rights" the sum of $50,000, $10,000 to be paid on the

date of entry of a final decree for divorce and the balance in installments of $1,000 on the first day of each month beginning January 1, 1952, and continuing for the following 39 consecutive months.

The agreement also provided, in part, as follows:

3. First Party [petitioner] terminated his full time employment by SPIEGEL, INC., on July 6th, 1951, and SPIEGEL, INC. agreed at that time to pay him, in equal monthly installments, severance pay of TWENTY-FIVE THOUSAND DOLLARS ($25,000.00) annually for the following two (2) years. To secure the payment of the sums provided in the preceding paragraph TWO (2) hereof, First Party agrees concurrently herewith to execute and deliver to Second Party [Rose Gimbel Stecker] an assignment and direction to SPIEGEL, INC. to pay to Second Party, so long as any sums remain unpaid under the terms of the preceding Paragraph TWO (2) hereof, the sum of ONE THOUSAND DOLLARS ($1,000.00) out of each monthly severance pay installment becoming due and payable to First Party from and after the date of written notice to SPIEGEL, INC. by Second Party that First Party has defaulted in his installment payments as provided in the preceding Paragraph TWO (2) hereof. Such payments so made by SPIEGEL, INC., shall apply in reduction of First Party's obligations under the provisions of the preceding Paragraph TWO (2) hereof. Second Party agrees, however, that she shall not have the right to demand payment from SPIEGEL, INC. by virtue of said assignment and direction until and unless First Party has defaulted in the payment of any installment provided in the preceding Paragraph TWO (2) hereof and said default has continued beyond the fifteenth (15th) day of the month in which such default occurred.

4. To further secure the sums provided in the preceding Paragraph TWO (2) hereof, First Party also agrees:

(a) Concurrently herewith, to execute a certain Trust Agreement * * * incorporated herein and made a part hereof;

(b) Concurrently herewith, to assign and deliver to DAVID JACKER and BENJAMIN B. DAVIS, of Chicago, Illinois, as Trustees under said Trust Agreement, unencumbered policies of life insurance on First Party's life having a face value of not less than TWENTY-FIVE THOUSAND DOLLARS ($25,000.00) and to pay the premiums and maintain said insurance in full force and effect until his obligations provided in preceding Paragraph TWO (2) hereof have been fully performed. Upon the payment in full of the sums due Second Party under the provisions of preceding Paragraph TWO (2) hereof the Trustees shall reassign and redeliver said insurance policies to the First Party;

(c) Concurrently herewith, to assign and deliver to DAVID JACKER and BENJAMIN B. DAVIS, as Trustees under said Trust Agreement stock certificates evidencing one thousand (1,000) Shares of the Common Capital Stock of SPIEGEL, INC. It is the understanding of the parties that the Trustees shall retain in their possession only a sufficient number of shares of SPIEGEL, INC., the value of which (as determined from the quotation on the New York Stock Exchange) when added to the cash surrender value of the insurance policies referred to in this Paragraph FOUR (4) hereof shall equal the sum remaining unpaid, from time to time, under the provisions of the preceding Paragraph TWO (2) hereof. First Party shall have the right to request, and upon his request, from time to time, the Trustees shall reassign and redeliver to him, shares of stock of SPIEGEL, INC., the value of which is in excess of such amount. Upon the payment in full of the sums provided in the preceding

Paragraph TWO (2) hereof, the Trustees shall reassign and redeliver to First Party the remaining shares in their hands.

5. In the event First Party defaults in the payment of any installment as provided in the preceding Paragraph TWO (2) hereof, and said default continues for a period of thirty (30) days, upon the written request of the Second Party the Trustees, upon thirty (30) days' notice in writing to First Party directed to him at his last known address, shall sell, at public or private sale, at the best price obtainable, sufficient of the trust assets to pay in full to the Second Party the defaulted payments, together with any costs incurred by such default and sale.

6. In the event of the death of the First Party, before the payment in full of the sums provided in preceding Paragraph TWO (2) hereof, the Trustees shall collect the insurance proceeds from the insurance companies issuing the policies provided for in preceding Paragraph FOUR (4) hereof and pay the Second Party any balance remaining unpaid her under the provisions of preceding Paragraph TWO (2) hereof and pay the balance thereof and deliver any remaining trust assets in their hands to the executor, administrator, or personal representative of the First Party.

Pursuant to the separation agreement, petitioner made 12 monthly payments of $1,000 to Rose Gimbel Stecker during the years 1952 and 1953.

The petitioner contends that the payments made by him during the years 1952 and 1953 should be treated as periodic payments deductible by him under section 23(u) of the 1939 Code, up to an amount not in excess of 10 per cent of the total amount to be paid. The substance of his argument in support of this contention is that if he failed to make the payments required by the settlement agreement, and the assignment of the severance pay and the stock of Spiegel, Inc., became worthless, any balance remaining unpaid would have to be paid from the proceeds of his life insurance, and, inasmuch as the payment of that balance from such proceeds could not be made until he died, there was a possibility that it might be paid within a period ending more than 10 years from the date of the decree or separation agreement.

Petitioner's argument assumes that the deductibility of payments by a divorced husband to his former wife under section 23(u) depends upon the period within which she might receive such payments in the event of noncompliance with the agreement or decree rather than the period during which the payments are to be made by the terms of the agreement or decree. No support for such an assumption can be found in either section 23(u) or section 22(k). The alimony payments which a husband may deduct under section 23(u) are those which are includible in the gross income of his divorced wife under section 22(k). In section 22(k) such payments are limited to "periodic payments" and it provides that installment payments discharging a part of an obligation the principal sum of which is, in terms of money or property, specified in the decree or instrument incident to the divorce or separa-

tion shall not be considered periodic payments "except that an installment payment shall be considered a periodic payment * * * if such principal sum, *by the terms of the decree or instrument*, may be or is to be paid within a period ending more than 10 years from the date of such decree or instrument." (Italics supplied.)

Under the terms of the separation agreement the principal sum of $50,000 was to be paid in 40 months, beginning January 1, 1952, and in the absence of noncompliance with those terms that sum would be paid within a period ending less than 10 years from the date of the agreement. The possibility is always present that a divorced husband may not comply with the terms of a separation agreement and that, because of such noncompliance, a principal sum payable, by the terms of the agreement, within the 10-year period *may* be paid after its expiration. The statute does not, however, recognize the possibility of noncompliance as a factor to be taken into consideration in determining the period during which payments of the principal sum are to be made. It clearly contemplates that that period shall be the period during which the principal sum, by the terms of the decree or agreement, may be or is to be paid. As already noted, under the terms of the separation agreement petitioner was obligated to make installment payments of the principal sum of $50,000 within a period of 40 months. The installment payments made by petitioner during the years 1952 and 1953 do not, therefore, qualify as "periodic payments" and he is not entitled to deduct the amount of those payments in computing his net income.

*Decisions will be entered under Rule 50.*