WILLIAM D. PRICE, JR., PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 6949–65. Filed March 26, 1968.

*Williard A. Herbert*, for the petitioner.
*D. Ronald Morello*, for the respondent.

OPINION

Scott, *Judge:* Respondent determined statutory deficiencies in petitioner's income taxes for the calendar years 1962 and 1963 in the amounts of $1,330.34 and $1,534.34, respectively.

The issue for decision is whether petitioner is entitled to deductions in the amounts of $3,000 in 1962 and $3,600 in 1963 as alimony payments to his former wife.

All of the facts have been stipulated and are found accordingly.

Petitioner, an individual who resided at the date of the filing of the petition in this case in Dallas, Tex., filed his individual Federal income tax returns for the calendar years 1962 and 1963 with the district director of internal revenue at Dallas, Tex.

Petitioner and Clara Price (hereinafter referred to as Clara) were formerly husband and wife. On February 16, 1962, in contemplation of divorce, petitioner and Clara entered into an agreement which was entitled, "Community Property Partition and Settlement Agreement." This agreement recited that petitioner and Clara had separated and were now living apart and intended to so live, that a suit for divorce had been instituted by petitioner against Clara, and that the parties desired to make a final and complete partition and settlement of all their community interests in certain property and to exchange and partition between themselves certain of their community interests in order that it would not be necessary for the court to determine such matters between the parties. After this recitation followed the agreement between the parties as to certain property and payment set aside to Clara and as to property and payment set aside to petitioner. There then followed the releases by each party of the property set aside to the other and the provision that each party would execute such further documents as might be necessary to effect the terms of their agreement. Following the recitation of specific property set aside to Clara, the following statement appeared:

(d) Upon the consummation of this property settlement agreement and the entry of judgment of divorce, the Wife shall receive the following:

\*  \*  .  \*  \*  \*  \*  \*

(2) The sum of $23,000.00 as evidenced by one certain promissory note, in said amount, executed by William D. (Bill) Price, Jr., payable at the rate of $300.00 per month, with a further provision that the balance of said note may be paid in full at any time by the husband without additional penalty, and said note to further provide that in the event custody of the children born of the marriage be changed to vest in the Wife, that the monthly payments on said note, in the amount of $300.00, may be decreased in an amount equivalent to fifty per cent of any sums paid to Clara Price as and for child support. The aforementioned note is to be secured until paid in full by Southwestern Life Insurance Policy No. 994051, with the option resting in the husband to replace said policy as and for collateral, with decreasing term life insurance in an amount equivalent to the balance due on said note at the time of replacement.

Paragraph five of the agreement provided that petitioner obligated himself "to maintain the children born of this marriage, to-wit: Marcia Price and Linda Price, as exclusive primary beneficiaries on Southwestern Life Insurance Policy No. 994051 until such time as the youngest of said children, or the survivor of them, reaches the age of twenty-five years." Paragraph seven of the agreement provided as follows:

It is especially agreed by and between the parties hereto that due to the available facilities, financial arrangements, and conditions of the parties, it is to the best interests of the children that their custody be vested in and granted to the Husband, William D. (Bill) Price, Jr. Simultaneously with the execution of this instrument, the parties have signified their consent and their approval to an order whereby custody may be changed to vest in the Wife, Clara Price, conditioned upon certain requirements and changes of conditions of the parties. It is agreed that duplicate originals of said order shall be deposited with the attorneys for the respective parties, Joe H. McCracken, III, and William Andress, Jr., to be approved by the respective aforementioned attorneys, or their successors, and by them jointly presented to the Court for entry at such time as the requirements and conditions contained in said order have arisen or been complied with.

On February 19, 1962, petitioner and Clara were granted a divorce by a judgment of divorce entered by the judge of Domestic Relations Court in and for Dallas County, Texas. This judgment of divorce recited that a community property partition and settlement agreement entered into between the parties had been read and considered by the court and that it appearing to the court that the agreement was fair, just, and equitable, the agreement was approved and was made an order of the court. The judgment of divorce further recited that it appearing to the court that the best interests of the children (Linda Price and Marcia Price) would be served by vesting custody with petitioner, custody was vested with petitioner.

On February 19, 1962, petitioner executed a promissory note to Clara which provided as follows:

I, William D. Price, do promise to pay to the order of Clara Price the sum of $23,000.00, at the rate of $300.00 per month, until paid, with said monthly installment payments to be decreased in amount equal to one-half of any sums paid to Clara Price as and for child support. This note is secured until paid by Southwestern Life Insurance Policy # 994051 on the life of William D. Price, with the option in him to replace said collateral with decreasing term life insurance in an amount equal to the balance owing on this note at the time of replacement. This note, or any balance on same, may be paid at any time by the maker without penalty.

/s/William D. Price, Jr.
WILLIAM D. PRICE

First payment on this note shall be March 20th, 1962, and payments on the 20th day of each month thereafter.

(S) WDP

The parties have stipulated and agreed that the payments made or to be made pursuant to the terms of this note are payments in addition to the division of community property and are not a part of it.

Petitioner on his Federal income tax return for the calendar year 1962 claimed as a deduction for "Alimony Under Section 71 of the Internal Revenue Code" the amount of $3,000, and on his Federal income tax return for the calendar year 1963 claimed as a deduction with the same explanation the sum of $3,600.

Respondent in his notice of deficiency disallowed the claimed deduction for alimony payments in each of the years with the explanation that the amount was not an allowable deduction under the Internal Revenue Law.

It is petitioner's position that he is entitled to the claimed deductions of $3,000 in 1962 and $3,600 in 1963 as alimony payments under the provisions of sections 215(a) and 71 I.R.C. 1954,[1] and respondent's regulations issued pursuant thereto.[2]

---

[1] All references are to the Internal Revenue Code of 1954.

SEC. 71. ALIMONY AND SEPARATE MAINTENANCE PAYMENTS.

(a) GENERAL RULE.—

(1) DECREE OF DIVORCE OR SEPARATE MAINTENANCE.—If a wife is divorced or legally separated from her husband under a decree of divorce or of separate maintenance, the wife's gross income includes periodic payments (whether or not made at regular intervals) received after such decree in discharge of (or attributable to property transferred, in trust or otherwise, in discharge of) a legal obligation which, because of the marital or family relationship, is imposed on or incurred by the husband under the decree or under a written instrument incident to such divorce or separation.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

(c) PRINCIPAL SUM PAID IN INSTALLMENTS.—

(1) GENERAL RULE.—For purposes of subsection (a), installment payments discharging a part of an obligation the principal sum of which is, either in terms of money or property, specified in the decree, instrument, or agreement shall not be treated as periodic payments.

(2) WHERE PERIOD FOR PAYMENT IS MORE THAN 10 YEARS.—If by the terms of the decree, instrument, or agreement, the principal sum referred to in paragraph (1) is to be paid or may be paid over a period ending more than 10 years from the date of such decree, instrument, or agreement, then (notwithstanding paragraph (1)) the installment payments shall be treated as periodic payments for purposes of subsection (a), but (in the case of any one taxable year of the wife) only to the extent of 10 percent of the principal sum. For purposes of the preceding sentence, the part of any principal sum which is allocable to a period after the taxable year of the wife in which it is received shall be treated as an installment payment for the taxable year in which it is received.

SEC. 215. ALIMONY, ETC., PAYMENTS.

(a) GENERAL RULE.—In the case of a husband described in section 71, there shall be allowed as a deduction amounts includible under section 71 in the gross income of his wife, payment of which is made within the husband's taxable year. No deduction shall be allowed under the preceding sentence with respect to any payment if, by reason of section 71 (d) or 682, the amount thereof is not includible in the husband's gross income.

[2] Sec. 1.71–1(d) [Income Tax Regs.]. *Periodic and installment payments.* (1) In general, installment payments discharging a part of an obligation the principal sum of which is, in terms of money or property, specified in the decree, instrument, or agreement are not considered "periodic payments" and therefore are not to be included under section 71 (a) in the wife's income.

(2) An exception to the general rule stated in subparagraph (1) of this paragraph is provided, however, in cases where such principal sum, by the terms of the decree, instrument, or agreement, may be or is to be paid over a period ending more than 10 years from the date of such decree, instrument, or agreement. In such cases, the installment payment

Petitioner contends that since the amount provided to be paid in the $23,000 note was an amount in addition to the division of the community property between the parties, it represented support money to be paid by petitioner to Clara, which petitioner contractually bound himself to pay in a contract which was fully enforceable under the laws of the State of Texas. Petitioner then states that whereas the note initially was to be paid at the rate of $300 per month, there existed a contingency that in the event of a change in Clara's economic status, the children born of the marriage would be placed in her custody and the $300 monthly payment would be reduced by 50 percent of the amount that the Domestic Relations Court would require petitioner to pay to Clara for the support of the children. Petitioner states that this is such a contingency as is contemplated under section 1.71–1(d)(3)(i) and (ii) of respondent's regulations and therefore the payments should be considered as deductible alimony payments.

Under Texas law, a settlement agreement incorporated into a divorce judgment is interpreted as if it were a contract between the parties and interpretation thereof is governed by laws relating to contracts. *Ex parte Jones*, 358 S.W. 2d 370 (Tex. 1962). Tex. Rev. Civ. Stat. Ann. art. 4637 (1960), provides for alimony for the wife during the pendency of a divorce proceeding, and art. 4638 provides that the court pronouncing a decree of divorce shall also decree a division of the estate of the parties. However, the statutes and "public policy" of Texas "do not sanction alimony for the wife after a judgment of divorce has been entered." *Francis* v. *Francis*, 412 S.W. 2d 29, 32 (Tex. 1967). This, however, does not mean that obligations assumed by the husband in separation agreements or contracts made by the husband with the wife to make payments for the support of the wife after a

is considered a periodic payment for the purposes of section 71 (a) but only to the extent that the installment payment, or sum of the installment payments, received during the wife's taxable year does not exceed 10 percent of the principal sum. This 10-percent limitation applies to installment payments made in advance but does not apply to delinquent installment payments for a prior taxable year of the wife made during her taxable year.

(3) (i) Where payments under a decree, instrument, or agreement are to be paid over a period ending 10 years or less from the date of such decree, instrument, or agreement, such payments are not installment payments discharging a part of an obligation the principal sum of which is, in terms of money or property, specified in the decree, instrument, or agreement (and are considered periodic payments for the purposes of section 71 (a)) only if such payments meet the following two conditions:

(a) Such payments are subject to any one or more of the contingencies of death of either spouse, remarriage of the wife, or change in the economic status of either spouse, and

(b) Such payments are in the nature of alimony or an allowance for support.

(ii) Payments meeting the requirements of subdivision (i) are considered periodic payments for the purposes of section 71 (a) regardless of whether—

(a) The contingencies described in subdivision (1) (a) of this subparagraph are set forth in the terms of the decree, instrument, or agreement, or are imposed by local law, or

(b) The aggregate amount of the payments to be made in the absence of the occurrence of the contingencies described in subdivision (1) (a) of this subparagraph is explicitly stated in the decree, instrument, or agreement or may be calculated from the face of the decree, instrument, or agreement, or

(c) The total amount which will be paid may be calculated actuarially.

divorce becomes final will not be enforced as contractual obligations of the husband. Such a contractual obligation of the husband to make payments on an installment basis evidenced by a promissory note, whether the total amount is to be paid in all events or the payments are to cease upon remarriage of the wife, are not void as being in violation of public policy. *Francis* v. *Francis, supra.*

In cases of divorces granted by Texas courts where the husband has assumed a contractual obligation to pay periodic sums to his wife with the provision that the payments will cease upon death or remarriage of the wife, this Court and other courts have recognized the payments to be periodic payments of alimony for the purpose of section 71(a) and comparable provisions of the 1939 Code. *Thomas E. Hogg*, 13 T.C. 361 (1949); *Scofield* v. *Greer*, 185 F. 2d 551 (C.A. 5, 1950); and *Taylor* v. *Campbell*, 335 F. 2d 841 (C.A. 5, 1964). Therefore, if the agreement here provided that the payments on petitioner's note to Clara were to cease upon her death or remarriage we would conclude in accordance with these cases that nothing in the Texas law prohibited the treatment of the payments as alimony payments. As petitioner has pointed out, respondent's own regulations provide that periodic payments are not "installment payments discharging a part of an obligation, the principal sum of which is * * * specified in the decree, instrument, or agreement" if the payments are subject to the contingencies of death of either spouse, remarriage of the wife, or change in the economic status of either spouse (sec. 1.71–1(d)(3)(i), Income Tax Regs.). These contingencies may be either set forth in the decree or agreement or imposed by local law. See *Alton F. Lounsbury*, 37 T.C. 163 (1961), affd. 321 F. 2d 925 (C.A. 9, 1963).

Since the Texas law does not provide for alimony after a divorce decree but considers such alimony against public policy, we can look here only to the terms of the agreement between petitioner and Clara to determine whether any such contingency exists which might result in less than the specific amount of $23,000 being paid to her by petitioner.

Both in the agreement between petitioner and Clara and in petitioner's note, the $23,000 is stated as an amount absolute to be paid in all events. There is no provision that payments will cease upon Clara's remarriage or death, and the intent that the payments be made by petitioner's estate in the event of his death clearly appears from the requirement that the payment be secured by a life insurance policy on petitioner's life in the amount of the unpaid balance of the note. It is also clear that if payments of $300 monthly are made on the note, the full amount of the $23,000 will be paid 6 years and 6 months after the date of the divorce.

We do not agree with petitioner that the facts here support his contention that the payments are subject to the contingency of a "change

in the economic status of either spouse." The total payment, as we have heretofore said, is a definite amount, which amount is in a principal sum specified in the agreement incident to the divorce. The contingency which petitioner refers to as causing the payments to be subject to a "change in the economic status of Clara" is the provision reducing the amount of the monthly payments in the event Clara is given custody of the children, and petitioner is required to make payments to Clara for the support of the children.

As we interpret the note, the fact that Clara might be given custody of the children and petitioner required to pay to Clara support for the children would not reduce the total amount of the $23,000 note ultimately payable by petitioner to Clara, but would prolong the time over which the note would be paid since the monthly payments on the note would be reduced.

The contingency of a change in the economic status of either spouse referred to in respondent's regulations is a contingency of a type which would change the principal amount to be paid should the economic status of one spouse or the other change. Therefore, under the statute, as well as under respondent's regulations, the payments to be made by petitioner to Clara under this note are installment payments discharging a part of an obligation, the principal sum of which is specified in terms of money in the agreement.

The only remaining question is whether by the terms of the agreement the principal sum "is to be paid or may be paid over a period ending more than 10 years from the date" of the agreement. If, by the terms of the agreement which was incorporated in the decree, the principal sum is to be paid or may be paid over a period ending more than 10 years from the date of the decree, then to the extent of 10 percent of the principal sum each year the payments are to be treated as periodic payments deductible by petitioner.

The question, of course, is whether the agreement or decree, by its terms, permits installment payments of amounts which would cause the principal sum not to be paid within the 10-year period. Here, the note provides that the balance may be paid at any time by the maker without penalty so if the question were whether payment could be accelerated under the agreement, some help might be derived from this provision in the note. However, the amount by which payments might be reduced and the years over which such payments might be reduced are not shown by this record. The agreement provides that "in the event custody of the children born of the marriage be changed to vest in the Wife, that the monthly payments on said note, in the amount of $300.00, may be decreased in an amount equivalent to 50 percent of any sums paid to Clara Price as and for child support." The agreement

further provides that "the parties have signified their consent and their approval to an order whereby custody may be changed to vest in the Wife, Clara Price, conditioned upon certain requirements and changes of conditions of the parties." What requirements or changes in conditions of the parties is necessary in order for custody to be changed to Clara are not shown in the record. Therefore, it is not shown in the record under what circumstances or even at what time the monthly payments might be reduced.

Furthermore, nowhere in the record do the ages of the two children, Linda Price and Marcia Price, appear. There is a provision that petitioner will keep the two children as the primary beneficiaries on a life insurance policy until such time as the youngest of the children, or the survivor of them, reaches the age of 25 years. This record does not even show, at any point, that Linda and Marcia were minors at the date of petitioner's and Clara's divorce, except the reference to "their custody being vested in petitioner." Insofar as the record in this case shows, these two children could be of such an age that even had their custody been transferred to Clara prior to the date the first payment on the $23,000 note was due and support money of such an amount directed to be paid by petitioner, that no payments would be made on the note until the younger of the two children became of legal age or self-supporting, the time which would expire before the full payments on the note were resumed would not be sufficient to extend the payments for a period ending more than 10 years from the date of the decree or agreement. Insofar as this record shows the two children might have been 19 or 20 years old at the date of the divorce decree.

Therefore, the record which we have here is totally insufficient to show that under the provisions of the agreement, the principal obligation of $23,000 for which petitioner gave a note to Clara might, by the terms of the agreement, be paid over a period ending more than 10 years from the date of the decree or agreement. It is, of course, "the terms of the decree, instrument or agreement" which control. *Robert D. Stecker*, 31 T.C. 749 (1959). Where the husband fails to show that by the terms of the decree or agreement the principal sum which is to be paid in installments may be paid over a period ending more than 10 years from the date of such decree or agreement, he has failed to show that he is entitled to the deduction provided for by section 215 since this deduction is allowed to the husband only for amounts includable under section 71 in the gross income of his wife.

We therefore decide the issue here presented for respondent. However, since the stipulation refers to an overpayment to be credited against the deficiency for the year 1963,

*Decision will be entered under Rule 50.*