MARVIN ANSEL YOUNG AND GLENDORA MAY YOUNG, PETITIONERS *v.*
COMMISSIONER OF INTERNAL REVENUE, RESPONDENT
GEORGE C. WALLACE AND MAUZELLA WALLACE, PETITIONERS *v.* COM-
MISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 3929-69, 3995-69. Filed July 18, 1972.

*Robert F. Brandenburg, Jr.,* and *Harry G. Foreman,* for the petitioners in docket No. 3929-69.

*Raymond O. Burger, Gary F. Fuller,* and *Reid E. Robison,* for the petitioners in docket No. 3995-69.

*Thomas J. Miller,* for the respondent.

DAWSON, *Judge:* In these consolidated cases the respondent determined the following Federal income tax deficiencies:

| Petitioners | Docket No. | Year | Deficiency |
|---|---|---|---|
| Marvin Ansel Young and Glendora May Young_____ | 3929-69 { | 1966 | $574.54 |
|  |  | 1967 | 497.41 |
| George C. Wallace and Mauzella Wallace_____ | 3995-69 { | 1966 | 732.47 |
|  |  | 1967 | 742.32 |

Petitioners George C. Wallace and Mauzella Wallace have conceded one issue concerning their medical expense deduction for the year

1966. The only issue remaining for decision is whether $3,000 paid by George C. Wallace in 1966 and again in 1967 to his former wife, Glendora May Young, should be included in Glendora's gross income for those years under section 71, I.R.C. 1954,[1] and allowed as a deduction to George under section 215.

FINDINGS OF FACT

Some of the facts have been stipulated and are found accordingly.

Petitioners Marvin Ansel Young and Glendora May Young (herein called Glendora) were residents of Norman, Okla., when they filed their petition with this Court. They filed joint Federal income tax returns for the years 1966 and 1967 with the district director of internal revenue at Oklahoma City, Okla. On these returns they did not include the $3,000 payments received from George C. Wallace as income.

Petitioners George C. Wallace (herein called George) and Mauzella Wallace resided in Enid, Okla., when they filed their petition herein. In 1966 and 1967 they filed joint Federal income tax returns with the district director of internal revenue at Oklahoma City, Okla. On both returns they claimed a deduction for the amounts paid by George to Glendora in 1966 and 1967.

George and Glendora were married on November 22, 1941. They had three children. One of the children, Darrell, was born on February 20, 1949.

On June 25, 1963, Glendora obtained a divorce from George in an action filed with the District Court of Cleveland County, Okla. The decree of divorce awarded Glendora alimony in the amount of $41,650 to be paid in installments of $350 per month. Payment was to be completed in 119 installments. The decree reads as follows:

Now on this 25th day of June, 1963, the same being one of the regular court days of this Court, the above styled and numbered cause comes on regularly for trial, Plaintiff appearing in person, and by counsel, Hugh P. Mabe, and Defendant appearing in person. All the evidence having been presented, and the Court being fully advised in the premises, finds that the thirty day waiting period required in such case has passed, and that the allegations contained in the petition of Plaintiff are true. The Defendant elected to stand on Plaintiff's evidence, and rested. That Plaintiff is a bona fide resident of the State of Oklahoma, and of Cleveland County; that there are three minor children, as alleged; that Defendant has been guilty of extreme mental cruelty, as alleged; that Plaintiff is a fit and proper person to be awarded the custody of said minor children; that One hundred fifty dollars ($150.00) per month per child is a reasonable amount for support of said minor children; that the properties ac-

---

[1] All statutory references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.

cumulated by the parties during said marriage, should be divided as prayed for; and that Plaintiff be awarded alimony in the amount of Forty-one thousand six hundred and fifty dollars ($41,650.00) to be paid to Plaintiff at the rate of $350.00 per month until fully paid out.

It Is Therefore Ordered, Adjudged, and Decreed by the Court that the Plaintiff be awarded a Decree of Divorce from the Defendant, on the grounds of extreme mental cruelty, as aforesaid, and the bonds of matrimony heretofore existing between the parties be, and the same hereby are dissolved, set aside, and held for naught. ·

It Is Further Ordered, Adjudged, and Decreed by the Court that Plaintiff be awarded the custody of the minor children of the parties, subject to the right of Defendant to visit with said minor children at reasonable and seasonable times.

It Is Further Ordered, Adjudged, and Decreed by the Court that Defendant pay the sum of one hundred fifty dollars ($150.00) per month per child, for the support of said minor children of the parties, said sum to be paid through the Clerk of this Court, on or before the 1st day of each month, and continuing until further order of this Court.

It Is Further Ordered, Adjudged, and Decreed by the Court that Plaintiff be awarded the home at 731 Oakbrook Drive, subject to the mortgage payments thereon, together with the household furnishings therein; that Plaintiff also be awarded the 1963 Oldsmobile 98 Sedan, subject to the mortgage payments thereon, and that Plaintiff be awarded one-half of the proceeds of a $9,000.00 note, aforementioned.

It Is Further Ordered, Adjudged, and Decreed by the Court that Defendant pay to Plaintiff the sum of Forty-one thousand six hundred and fifty dollars ($41,650.00) alimony; that said sum should be paid to Plaintiff at the rate of $350.00 per month until the full amount has been paid, payable through the Clerk of this Court on or before the 15th day of each month, and continuing until further order of this Court.

It Is Further Ordered, Adjudged and Decreed by the Court that insofar as the rights of the parties hereto to remarry are concerned, this Decree shall not become final, absolute, or take effect until after the expiration of six months from this date.

George made the first monthly payment on July 15, 1963, and continued to comply with the terms of the decree until February of 1964 when he began falling behind. During 1964 he was twice cited for contempt and was adjudged guilty of contempt on May 6, 1964. Later, on September 28, 1964, he was purged of contempt, but he was again cited for contempt on November 13, 1964. He was scheduled for a jury trial on the second contempt citation on December 10, 1964.

To alleviate the problem of alimony payment and to enable George to purge himself of contempt, the parties entered into an "alimony agreement" dated December 10, 1964, which was filed with and approved by the District Court of Cleveland County, Okla. Under the terms of the agreement, George was to pay the unpaid balance owing under the decree ($38,050) in installments of $250—rather than $350—

per month until such time as Darrell became emancipated or obtained majority; then the amount of the monthly payment was to be increased to $400 per month. Since Darrell would reach the age of 21 on February 20, 1970, it could be foreseen that payment under this agreement would be completed in less than 120 installments (approximately 118 installments). The "alimony agreement" reads as follows:

This agreement made and entered into this 10th day of December, 1964, between plaintiff and defendant herein, and upon approval of the Court.

There having been filed in the District Court of Cleveland County, State of Oklahoma, by the Plaintiff, a citation for contempt against the defendant, and the same being set for trial on December 10, 1964, and there having been an agreement reached between the parties concerning this matter, and with reference to the previous order of the Court dated June 25, 1963, it is therefore agreed by and between the parties, subject to the approval of the Court that:

For and in consideration of the payment to plaintiff by defendant of the sum of $2,000.00, plaintiff waives any further right she may have under the decree of divorce dated June 25, 1963, with reference to the one-half interest of the proceeds of the $9,000.00 note, it being agreed that this is the remainder and residue of plaintiff's interest in said note.

Plaintiff, in further consideration of the above payment, hereby agrees that all alimony due and payable under the decree of divorce dated June 25, 1963, be extended pursuant to this agreement and she hereby requests the Court to purge defendant of his contempt as a result of the nonpayment of any alimony payments to date.

Plaintiff further agrees that the decree of divorce dated June 25, 1963, may be modified with respect to the parties in that beginning on the 1st day of January, 1965, defendant shall pay to the plaintiff, the sum of $38,050.00 which amount represents the unpaid balance due on the alimony judgment to be paid at the rate of $250.00 per month beginning on the 1st day of January, 1965, until paid. Except that in the event that the minor child, Darrell Wallace, now residing with plaintiff becomes emancipated or obtains majority, then and in that event, defendant will continue to pay plaintiff the amount of $150.00 per month, which amount will be payment on the alimony judgment.

It is further understood by the parties that this agreement in no way effects [sic] the order of the Court with respect to child support.

In support of this agreement, the Court heard the testimony of the parties and finds that the matters and things contained herein are as stated, and it appearing to be the intention of the parties to consummate this agreement approves the same.

Darrell Wallace joined the Armed Forces of the United States on or about January 22, 1969. Thus payment under the "alimony agreement" was completed even sooner than expected, i.e., in approximately 114 monthly installments.

In 1968, when she learned that her former husband had been and was deducting his payments to her, Glendora filed a "Motion to Clarify Order" with the District Court of Cleveland County. In it she asked that the court find that the original decree required payment of the

principal sum ($41,650) over a period ending less than 10 years from the date of the decree.

After hearing testimony and considering the parties' briefs, the District Court of Cleveland County found that it was without jurisdiction to change the original decree of divorce. The court's order, dated January 4, 1969, reads as follows:

Now on the 24th day of September, 1968, there came on for hearing a Motion to Clarify Order filed by plaintiff, Glendora May Wallace, before the Honorable Elvin J. Brown, Judge of the District Court in and for Cleveland County, State of Oklahoma. Plaintiff appearing in person and by her attorney, Lester A. Reynolds; defendant appearing in person and by his attorney, Raymond O. Burger, and the Court after hearing the sworn testimony of witnesses, then took the matter under advisement and requested briefs from the parties involved.

After hearing testimony and considering the parties' briefs, the as filed in this cause, the Court finds that it was without jurisdiction to change the Decree of Divorce of June 25, 1963, under which the parties' rights and responsibilities have continued to accrue; and the Court finds further, that although the defendant's obligation to pay plaintiff alimony the sum of $41,-650.00 at the rate of $350.00 per month has continued unabated, the plaintiff is equitably estopped to cite the defendant for contempt of court for violation of the alimony payment ordered by such Decree of Divorce of June 25, 1963, so long as the defendant complies with the subsequent Alimony Agreement of December 10, 1964, although all other execution processes remain available to the plaintiff.

It Is Hereby Ordered, Adjudged and Decreed by the Court that the Court was without jurisdiction to change the Decree of Divorce of June 25, 1963, and that the defendant's obligation thereunder to pay plaintiff alimony in the sum of $41,650.00 at the rate of $350.00 per month continues in full force and effect, but the plaintiff is ordered equitably estopped to cite defendant for contempt of court for failure to make such alimony payments, so long as defendant complies with the terms of the Alimony Agreement executed between the parties and approved by the Court December 10, 1964. Done in open court this 4th day of January, 1969.

George took exception to the court's order and appealed to the Supreme Court of the State of Oklahoma. The Oklahoma Supreme Court reversed the lower court's decision on the ground that jurisdiction did exist upon the joint application of both parties; and therefore it remanded the case to the lower court with directions to grant a new trial. The Oklahoma Supreme Court did not express an opinion as to whether the lower court in fact exercised its jurisdiction to modify the decree. *Wallace* v. *Wallace*, 490 P. 2d 749 (Okla. 1971).

Upon remand, the District Court of Cleveland County, after hearing the parties' arguments, wrote the following memorandum opinion:

(1) The voluntary appearance of the parties and their consent for the Court to hear the matter conferred jurisdiction upon the Court to modify their 1963 Decree.

(2) However, neither party requested the Court in any way, manner, method or detail, to modify that Decree, or its alimony award, nothwithstanding [sic] any implication to the contrary from the ineptly worded "Alimony Agreement" of 12–10–64.

(3) The parties appeared and asked that their agreement be approved only because of the financial pressures produced by repetitive contempt citations.

(4) Defendant specifically agreed that his alimony obligation continued to accrue at the rate of $350.00 per month, but he acknowledged understanding that if the Court approved their Agreement, he would only have to pay $250.00 per month until his child support stopped, at which time he would start paying $400.00 per month, which was more than required under the 1963 Decree.

(5) Plaintiff specifically stated that while she knew her alimony was accumulating at the rate of $350.00 per month, she was agreeing to give up any right to coerce payment through contempt proceedings or execution of more than $250.00 per month until the child support stopped, when she could expect $400.00 per month toward retirement of the accrued and accruing alimony due her.

Therefore, the Court concludes that it was not the intention of the parties or of the Court to modify the alimony award contained in the 1963 Divorce Decree of these parties, but that it was the announced intention of the parties and Order of the Court to estop the plaintiff from enforcing the collection through contempt of more than $250.00 per month until majority or emancipation of the child, when defendant would pay $400.00 per month. While this appears in retrospect to be a poor method of accomplishing the desired result, such is what happened.

Lest anyone misunderstand and suspect one or the other of these attorneys of perpetrating a fraud on the Court or the other party, it is well to remember that neither of these are the original attorneys for either party. Only the parties and the trial judge maintain their original stations in this case, and the trial judge looks forward to the day when he can terminate his association with this matter.

Counsel may draw a Journal Entry reflecting the conclusion of this Memoranda Opinion and preserving exceptions dated this 8th day of February, 1972.

George made all payments called for under the "alimony agreement" from its inception to the date of the trial of these consolidated cases.

### OPINION

The issue confronting us is whether payments made in the taxable years 1966 and 1967 by George to his former wife, Glendora, qualify as periodic alimony payments. If they do, they must be included in gross income by Glendora under section 71(a)[2] and are deductible by

---

[2] SEC. 71. ALIMONY AND SEPARATE MAINTENANCE PAYMENTS.

(a) GENERAL RULE.—

(1) DECREE OF DIVORCE OR SEPARATE MAINTENANCE.—If a wife is divorced or legally separated from her husband under a decree of divorce or of separate maintenance, the wife's gross income includes periodic payments (whether or not made at regular intervals) received after such decree in discharge of (or attributable to property transferred, in trust or otherwise, in discharge of) a legal obligation which, because of the marital or family relationship, is imposed on or incurred by the husband under the decree or under a written instrument incident to such divorce or separation.

George under section 215 (a).[3] If they are not periodic but are installment payments, then George bears the burden of taxation.[4]

The respondent took inconsistent positions in his notices of deficiency, determining in Glendora's case that the payments were periodic and in George's case that the payments were installment payments. This action was taken as a defensive measure to protect Federal revenue. On brief, however, respondent has adopted a position that favors the former wife, i.e., the payments were properly excluded from income by Glendora and improperly deducted by George. Respondent contends that the payments in issue should be characterized by reference to the alimony agreement of December 10, 1964, the instrument pursuant to which the payments were made.

The former wife's position is, of course, similar. She argues that the alimony payments made from June 25, 1963, until December 10, 1964, were made pursuant to the original divorce decree and were installment payments; that all payments made thereafter, including those made in the taxable years 1966 and 1967, were made pursuant to the subsequent alimony agreement and were likewise installment payments; and that payments made pursuant to the decree cannot be tacked on to payments made pursuant to the agreement so as to extend the period for payment past the 10-year limitation set forth in the statute [5] and regulations, thus making payments made pursuant to the agreement periodic.

George's position is that the starting point for computing the 10-year period is the date of the divorce decree, that the agreement did not modify or supersede the original decree, and that therefore the

---

[3] SEC. 215. ALIMONY, ETC., PAYMENTS.

(a) GENERAL RULE.—In the case of a husband described in section 71, there shall be allowed as a deduction amounts includible under section 71 in the gross income of his wife, payment of which is made within the husband's taxable year. No deduction shall be allowed under the preceding sentence with respect to any payment if, by reason of section 71(d) or 682, the amount thereof is not includible in the husband's gross income.

[4] Sec. 71(d) provides in part as follows :

(d) RULE FOR HUSBAND IN CASE OF TRANSFERRED PROPERTY.—The husband's gross income does not include amounts received which, under subsection (a), are (1) includible in the gross income of the wife, * * *

[5] SEC. 71(c). PRINCIPAL SUM PAID IN INSTALLMENTS.—

(1) GENERAL RULE.—For purposes of subsection (a), installment payments discharging a part of an obligation the principal sum of which is, either in terms of money or property, specified in the decree, instrument, or agreement shall not be treated as periodic payments.

(2) WHERE PERIOD FOR PAYMENT IS MORE THAN 10 YEARS.—If, by the terms of the decree, instrument, or agreement, the principal sum referred to in paragraph (1) is to be paid or may be paid over a period ending more than 10 years from the date of such decree, instrument, or agreement, then (notwithstanding paragraph (1)) the installment payments shall be treated as periodic payments for purposes of subsection (a), but (in the case of any one taxable year of the wife) only to the extent of 10 percent of the principal sum. For purposes of the preceding sentence, the part of any principal sum which is allocable to a period after the taxable year of the wife in which it is received shall be treated as an installment payment for the taxable year in which it is received.

See also sec. 1.71–1(d) (1) and (2), Income Tax Regs.

payments made or to be made after the signing of the subsequent agreement must be tacked on to those made before the agreement.

Respondent and Glendora cite two cases as standing for the proposition that in a case such as this one, where there is first a divorce decree and then an amendatory agreement, all post-agreement payments must be considered as being paid pursuant to the agreement and only the agreement can be looked to in determining the character of the payments. The cases are *Frank J. Loverin*, 10 T.C. 406 (1948), and *Mary Louise Williams*, T.C. Memo. 1953-341. George distinguishes these cases on the ground that they involved agreements that completely superseded the terms of the divorce decree.[6] In both cases the decree called for periodic alimony payments and the subsequent agreement substituted an installment payment arrangement. In *Loverin*, the parties agreed to accept payments under their agreement in lieu of any and all payments under the decree, and they exchanged general releases. *Frank J. Loverin, supra* at 407. In *Williams*, the former spouses likewise agreed to an installment arrangement in lieu of the periodic arrangement established by the decree. They also executed a satisfaction of judgment. *Mary Louise Williams, supra*. Here the original decree was not superseded or supplanted by the subsequent agreement. In fact, the trial judge who granted the original divorce decree and signed the later agreement wrote in the memorandum opinion in response to Glendora's "Motion to Clarify Order" that "it was not the intention of the parties or of the Court to modify the alimony award contained in the 1963 Divorce Decree of the parties * * *." See also, *Alan E. Ashcraft, Jr.*, 252 F. 2d 200 (C.A. 7, 1958), affirming 28 T.C. 356 (1957).

These two cases aside, it is also in the former husband's favor that both the decree and the subsequent agreement called for installment payments. The problem of combining periodic payments with installment payments does not appear herein. See and compare *Furrow* v. *Commissioner*, 292 F. 2d 604 (C.A. 10, 1961) (payments made *pendente lite* are periodic; they cannot be added to section 71(c)(1) installment payments). See also *Ellert* v. *Commissioner*, 311 F. 2d 707 (C.A. 6, 1962) (payments made under a temporary alimony agreement cannot be tacked on to later payments under a separation agreement that was incorporated in the divorce decree: "the payments made under the [temporary agreement] * * * were not in payment of any principal sum, nor were they even referred to in the separation agreement or in the divorce decree, and therefore may not be tacked on to

---

[6] For a case which makes the same distinction, see *Forest R. Lemasters*, T.C. Memo. 1971-47, on appeal (C.A. 7, June 16, 1971).

the payments provided for in paragraph 4 [of the separation agreement]"); and *Estate of John M. Jarboe*, 39 T.C. 690 (1963) (where this Court relied on *Alan E. Ashcraft, Jr., supra*, and *Ellert* v. *Commissioner, supra*).

Still, we cannot agree with the former husband's conclusion that the 10-year period begins on the date of the divorce decree and runs until the conclusion of payments under the subsequent agreement. We view the realities of this case in the same way as the State court trial judge: The parties have caused a decree to be issued that calls for installment payments of $350 per month over a 119-month period. Eighteen months later they laid on top of that decree a bilateral agreement calling for installment payments of $250 per month (to be increased to $400 per month no later than x years and x months into the agreement). So, at the time of the payments in question, 1966 and 1967, the parties were operating under both the decree and the agreement. Under the decree, Glendora could compel George to pay her $250 per month. She could not compel him to pay the full $350 per month because she was equitably estopped from doing so. See Judge Brown's memorandum opinion set out in our Findings of Fact. Under the agreement, Glendora had a legal right to receive $250 per month, and $400 per month later. The decree will expire 119 months after the date of the first payment, July 15, 1963, i.e., June 15, 1973. The agreement, on the other hand, will continue in existence until the principal sum of $38,050 is paid out, i.e., no later than October 1974. As George admits, the divorce decree has not been modified so as to extend its original life past the statutory 10-year period.

Given this state of affairs, we know of no section of the Code or tax case that compels us to tack payments under the decree to payments under the agreement in order to create a figure in excess of 10 years or 120 months and thereby trigger the surprise metamorphosis of installment payments into periodic payments. Furthermore, common sense tells us that this area of the tax law, the area of alimony payments, does not need another camouflaged pitfall. Cf. *Lemuel Alexander Carmichael*, 14 T.C. 1356, 1365–1366 (1950). We hold that the payments made pursuant solely to the decree cannot be tacked onto the payments made after the signing of the agreement.

George makes an alternative argument. Disregarding the preagreement payments and focusing on the "alimony agreement" alone, he argues that the period for payment exceeds the 10-year statutory period and therefore the payments qualify as periodic payments under section 71(c)(2). He admits that the occurrence of either of

the contingencies provided for under the agreement—the minor child's reaching majority or becoming emancipated—will cause payment of the $38,050 to be completed in less than 10 years.[7] Yet he contends that at the time the agreement was reached it was possible that the child would die prior to his reaching majority or becoming emancipated and the increase from $250 to $400 per month would never occur. Thus the principal sum may be paid over a period exceeding 10 years.

Section 71(c)(2), which is quoted in footnote 5, provides that if the principal sum, by the terms of the agreement, is to be paid or *may be paid* over a period lasting more than 10 years, then the installment payments shall be treated as periodic payments for purposes of subsection (a).

Concerning the phrase "may be paid" as it appears in subsection (c)(2), we said in *Alice Grabowski*, a case cited by the parties:

The word "may" in the phrase "may be paid" relates to the decree and it is to be given its ordinary permissive meaning as distinguished from ability, possibility, or what is likely to occur. The question is whether the decree by its terms permits installment payments of the principal sum so that the husband would be complying with the terms of the decree if he extended the payments beyond the 10-year period. If he does not, then the installment payments are not includible in the wife's income, even though it appears uncertain whether the husband will, or will be able to, make the payments within the 10-year period. In deciding whether the principal sum "may be paid" within 10 years, the possibility of noncompliance with the terms of the decree is not recognized. *Robert D. Stecker,* * * * [31 T.C. 749 (1959)]. In short, the issue is whether the decree grants Felix [the husband] the right to extend the installment payments on the principal sum of $23,500 beyond the 10-year period. [*Alice Grabowski,* T.C. Memo. 1962-43.]

See generally, 5 Mertens, Law of Federal Income Taxation, sec. 31A.04, pp. 50-51.

As we interpret the "alimony agreement," it requires George to complete his payments within a period of less than 10 years. Nowhere in the agreement is he permitted to extend the payments beyond the 10-year period. Even if the minor child had not become emancipated approximately 1 year before reaching majority, the agreement's principal sum still would have been paid out in less than 10 years. At the time he reached the age of 21, the amount of the monthly alimony payments was to have increased from $250 to $400; at that rate, the entire principal sum ($38,050) will be paid out in approximately

---

[7] In fact, Darrell became emancipated upon entering the Armed Forces approximately 13 months before his 21st birthday.

118 installments. Accordingly, we conclude that George does not have and never has had the right to extend his payments over a period exceeding 10 years.

Our decision in *William D. Price, Jr.*, 49 T.C. 676 (1968), does not compel us to reach a different conclusion. In that case the agreement provided for installment payments of a principal sum over a less-than-10-year period. It further provided that if the wife was later given custody of the children, the period for payment was to be extended. The principal sum due, however, would not be reduced under any circumstances. We held for the Commissioner on the ground that the husband had failed to show that by the terms of the agreement the principal sum "may be paid" over a period exceeding 10 years. The husband had not shown the ages of the children or any other facts that would show that if custody were given to the wife, the less-than-10-year period over which payment would otherwise be made would be extended beyond 10 years. The negative inference to be drawn from the case is that if the possibility or contingency [8] (i.e., the wife being given custody of the children) had been properly shown, the petitioner-husband would have succeeded in bringing his case within the "may be paid" phrase of subsection (c)(2). It is important to note, however, that the possibility that was discussed in *Price* was expressly provided for in the agreement. And, as we stated in both *Price* and *Robert D. Stecker, supra*, it is the terms of the decree, instrument, or agreement which control. In the instant case the possibility that the child might die prematurely was not mentioned in the agreement. The only possibility that was included in the 1964 agreement was the possibility (actually, the likelihood) that the child would reach majority or become emancipated and the payments would be increased thereby. Moreover, the possibility of the child's premature death is one step further removed than the possibility involved in the *Price* case. In *Price*, if the wife were to be given custody, then the period for payment would be extended beyond 10 years. Here, if the child reaches majority or is emancipated, then the payment period will *not* exceed 10 years. Thus the possibility at this level works to Glendora's advantage. George is attempting to extend the payment period by pointing out a contingency at the next level: If the child dies before reaching majority or becoming emancipated, then the first level possibility will never occur and, consequently, the payment period will be extended.

[8] It should be noted that the contingency talked about here differs from the type of contingency talked about in cases dealing with sec. 1.71–1(d)(3), Income Tax Regs. The contingency here referred to may affect the period for payment. The contingency that the regulation is concerned with affects the amount of the award. See *Richard T. Daniel, Jr.*, 56 T.C. 655, 664 (1971), affirmed per curiam 461 F. 2d 1265 (C.A. 5, 1972) ; *William D. Price, Jr.*, 49 T.C. 676, 682.

In view of our interpretation of the "alimony agreement," we hold that the period for payment under the agreement does not exceed 10 years.

Reviewed by the Court.

*Decision in docket No. 3929–69 will be entered for the petitioners.*

*Decision in docket No. 3995–69 will be entered for the respondent.*

---

SIMPSON, *J.*, concurring: I agree with the result reached by the majority, but my reasons for so concluding are somewhat different.

The purpose of sections 71 and 215 is to permit the husband and wife to enter into arrangements that will shift the tax burden with respect to alimony payments to the wife. See H. Rept. No. 2333, to accompany the Revenue Act of 1942, 77th Cong., 2d Sess., p. 46; see also *Commissioner* v. *Lester*, 366 U.S. 299 (1961); *Chester L. Tinsman*, 47 T.C. 560 (1967). However, the tax burden with respect to alimony payments is not shifted unless the intent to do so is clearly manifested in the instrument under which the payments are made. See *Commissioner* v. *Lester, supra; Chester L. Tinsman, supra*. Although the cases requiring the manifestation of such an intent were concerned with the distinction between alimony and support payments, the principles established by them should also be applied to the issue in this case.

It is clear, in this case, that the arrangement under the original decree was designed to provide for the payment of a principal sum in installments within a period of 10 years, and that under such arrangement, the husband was not entitled to deduct such payments and the wife was not required to include them in her income. The subsequent "alimony agreement" does not by its terms provide for the modified payments to be made over a period of more than 10 years, nor does such agreement indicate that the husband and wife agreed to extend the period under the original decree for payment of the installments. Thus, clearly, the original intention was not to shift the tax burden; although the alimony agreement reflects that the parties agreed to some changes in the arrangement for the payments to the wife, it does not indicate any intention to change the tax consequences of the original arrangement under the decree. The wife had no apparent reason to believe that she would become taxable on such payments as a result of the changes in the arrangement made by the alimony agreement. We need not decide whether the parties may, once they have agreed upon the payment of a principal sum in

installments, later change the agreement to provide for the periodic payment of alimony. At least, if they do wish to undertake to change the tax consequences of the original agreement, they must do so clearly so that both the former husband and former wife are aware of what they are doing. In the absence of a clear manifestation of an intention to change the original arrangement so as to achieve different tax consequences, the parties should be required to continue to follow the original arrangement and to adhere to the tax consequences to which they had clearly agreed upon.

DRENNEN, TANNENWALD, and GOFFE, *JJ.*, agree with this concurring opinion.