T.C. Summary Opinon 2009-185

UNITED STATES TAX COURT

LORI NOVAK, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 1176-08S.                    Filed December 7, 2009.

Lori Novak, pro se.

<u>Carol-Lynn E. Moran</u>, for respondent.

RUWE, <u>Judge</u>:  This case was heard pursuant to the provisions of section 7463[1] of the Internal Revenue Code in effect when the petition was filed.  Pursuant to section 7463(b), the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

---

[1] Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the year at issue.

Respondent determined a $1,669 deficiency in petitioner's 2005 Federal income tax. The issue we must decide is whether petitioner is entitled to an $8,772 alimony deduction for 2005.

## Background

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference. Petitioner resided in Pennsylvania at the time the petition was filed.

Petitioner and Joseph Kemp (Mr. Kemp) were married on November 10, 1984, and have four children. Sometime during 2004 petitioner left the marital residence. During 2005 the children resided with their father, Mr. Kemp, in New Jersey.

On April 8, 2005, the Superior Court of New Jersey Chancery Division--Family Part Gloucester County (superior court) in the case of "Joseph Kemp, Plaintiff vs. Lori Kemp, Defendant", issued an order addressing petitioner's motion and Mr. Kemp's cross-motion dated February 28, 2005. In the order, the superior court granted in part Mr. Kemp's request that petitioner contribute to the household bills and ordered petitioner to pay $516 per week pendente lite[2] toward "the marital bills" effective as of the filing date of the original motion, February 28, 2005. The April 2005 order provides, in pertinent part:

---

[2] Pendente lite is a Latin term meaning "while the action is pending". Black's Law Dictionary 1248 (9th ed. 2009).

This number is based on * * * [petitioner's] own Case Information Statement as to what the marital bills are each month. ($2,000/month mortgage, $430/month home equity loan, $250 heat, $200 electric and gas, $100 water and sewer, $500 joint credit cards, $957 other long term debt = $4,437/month /2 = $2,219/each/month = $516/week@4.3weeks.[]]

Petitioner's payments to Mr. Kemp were to be made biweekly and facilitated through Gloucester County Probation via wage execution. The superior court also denied Mr. Kemp's request that petitioner pay child support. Petitioner was liable for $516 per week from February 28 through June 17, 2005, for a total of 16 weeks.

Because of a change in living arrangements between petitioner and Mr. Kemp and pursuant to the parties' requests, the superior court, on June 17, 2005, issued an order granting petitioner's request to "equitably recalculate the support" and directed petitioner to pay $214 per week "for child support" plus $50 per week on the arrears, effective as of the date of the order. The June 2005 order also noted that petitioner was, at that time, "in arrears in support in the amount of $5,394.56." The arrears reflected payments still due pursuant to the superior court's April 2005 order. The superior court stated that the recalculated payment was "determined to be the net figure based on the attached guidelines minus an alimony figure of $100 per week paid by * * * [Mr. Kemp]."

The first biweekly payment by petitioner pursuant to the June 2005 order was made on July 20, 2005, for $528. The $528 payment reflected a child support payment of $314 per week netted to $214 to offset the $100 per week alimony payments due from Mr. Kemp, equaling $428 biweekly plus a biweekly arrearage of $100. Petitioner made a total of six $528 payments to Mr. Kemp. In the June 2005 order the superior court also granted Mr. Kemp's request for exclusive possession of the marital residence and further required him to refinance the mortgage or list the marital residence for sale. Both petitioner and Mr. Kemp agreed that the refinancing of the marital residence was to include the first and second mortgages.

On September 9, 2005, the superior court issued an order terminating petitioner's child support obligation and Mr. Kemp's alimony obligation. The superior court also stated that petitioner was entitled to a credit of $100 per week from June 17 to September 9, 2005, for having provided for the children's health care. Thereafter, on September 28, 2005, the superior court issued a final judgment of divorce; the divorce decree, however, is not part of the record.

Pursuant to the April, June, and September 2005 superior court orders, petitioner made payments to Mr. Kemp via wage execution as follows:

| Check Date | Check Amount |
|------------|--------------|
| 5/10/05 | $923.81 |
| 5/24/05 | 1,026.34 |
| 6/9/05 | 911.29 |
| 6/20/05 | 904.22 |
| 7/6/05 | 862.93 |
| 7/20/05 | 528.00 |
| 8/3/05 | 528.00 |
| 8/15/05 | 528.00 |
| 9/2/05 | 528.00 |
| 9/13/05 | 528.00 |
| 9/26/05 | 528.00 |
| 10/11/05 | 100.00 |
| 10/24/05 | 100.00 |
| 11/15/05 | 100.00 |
| 11/21/05 | 100.00 |
| 12/6/05 | 100.00 |
| 12/19/05 | 100.00 |
| Total | 8,396.59 |

The record does not disclose why there is a difference between petitioner's claimed $8,772 alimony deduction and the $8,396.59 she paid to Mr. Kemp through wage execution.

After filing her petition, petitioner returned to the superior court in August 2008 (almost 3 years after the divorce became final), requesting that the superior court clarify that her payments were spousal support, not child support. The superior court, through a different judge, granted petitioner's request stating:  "Prior to 10/17/07, there was no child support order in place between the parties.  There was however a spousal support obligation for * * * [petitioner] in 2005."

## Discussion

Section 215(a) provides that an individual is allowed a deduction for alimony or separate maintenance payments (hereinafter collectively referred to as alimony) as defined in section 71(b). Alimony must consist of an amount received by or on behalf of the payee spouse. Sec. 71(b)(1)(A). Thus a payment that satisfied the payor's share of joint debts and obligations would not qualify. Zinsmeister v. Commissioner, T.C. Memo. 2000-364, affd. 21 Fed. Appx. 529 (8th Cir. 2001). Alimony does not include any part of a payment which the terms of the divorce instrument fix as a sum payable for the support of the children of the payor spouse. Sec. 71(c); Zinsmeister v. Commissioner, supra. Furthermore, payments which are part of a property settlement are capital in nature and are not subject to section 71. Zampini v. Commissioner, T.C. Memo. 1991-395 (citing Yoakum v. Commissioner, 82 T.C. 128, 134 (1984), Thompson v. Commissioner, 50 T.C. 522 (1968), and Price v. Commissioner, 49 T.C. 676 (1968)).

While property interests of divorcing parties are determined by State law, Federal law governs the Federal income tax treatment of that property. Zinsmeister v. Commissioner, supra (citing Hoover v. Commissioner, 102 F.3d 842, 845 (6th Cir. 1996), affg. T.C. Memo. 1995-183). State court adjudications retroactively changing the rights of parties are generally

disregarded for Federal income tax purposes. <u>Ianniello v. Commissioner</u>, 98 T.C. 165, 175 n.5 (1992); see also <u>Ali v. Commissioner</u>, T.C. Memo. 2004-284 (retroactive imposition of support by a State court does not have retroactive effect for Federal tax purposes). Consequently, we do not ascribe conclusive weight to the label placed on the payments pursuant to the superior court's August 2008 order, which was entered by a different judge 3 years after the operative events.[3] Whether petitioner's payments to Mr. Kemp are considered alimony for Federal tax purposes will be determined under the guidelines of the applicable Federal law.

In the April 2005 order the superior court delineated petitioner's obligation to make payments to Mr. Kemp as a requirement to pay $516 per week "toward the marital bills." The superior court's determination was made on the basis of petitioner's own case information statement; i.e., petitioner was required to pay one-half of the monthly mortgage, the monthly home equity loan, the joint credit cards, the other long-term debt, and the utilities. Although petitioner left the marital

---

[3] We note that an exception to the general rule exists when a nunc pro tunc order retroactively corrects an order which failed to reflect the true intention of the court at the time it was rendered. <u>Gordon v. Commissioner</u>, 70 T.C. 525, 530 (1978); <u>Johnson v. Commissioner</u>, 45 T.C. 530, 532 (1966). There is no persuasive evidence that the superior court's August 2008 order corrected an order which failed to reflect the true intention of the court at the time it was rendered.

residence sometime during 2004, Mr. Kemp and the children continued to reside in the marital residence throughout 2005. At trial Mr. Kemp's uncontradicted testimony was that the mortgage, home equity loan, joint credit cards, and other long-term debt were joint obligations. To the extent petitioner was paying her share of the joint obligations, the payments do not qualify as alimony. See Zinsmeister v. Commissioner, supra. To the extent that the payments may have slightly exceeded petitioner's share of the joint obligations, petitioner has not convinced us that they constitute alimony to Mr. Kemp. Indeed, it would seem totally inconsistent to view any portion of petitioner's payments as alimony when, according to the superior court's order of June 17, 2005, Mr. Kemp was being given credit for alimony that he was obligated to pay to petitioner. In the June 2005 order the superior court not only granted Mr. Kemp's request that petitioner pay child support but also fixed petitioner's child support obligation at $214 per week.[4]

Petitioner has failed to prove that any of the payments were for anything other than her joint debt obligations and child support. In reaching our holdings herein, we have considered all

---

[4] We note that the June 2005 order reduced petitioner's payment obligation from $516 per week for the payment of marital bills to $214 per week child support plus an arrearage of $50. At the time the June order was issued, petitioner was in arrears by $5,394.56; a reflection of the payments still due pursuant to the superior court's April order.

arguments made, and, to the extent not mentioned above, we conclude they are moot, irrelevant, or without merit.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>for respondent</u>.