NANCY COLE MILLER, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent.
Miller v. Commissioner
Docket No. 5467-71.
United States Tax Court
T.C. Memo 1973-131; 1973 Tax Ct. Memo LEXIS 157; 32 T.C.M. (CCH) 570; T.C.M. (RIA) 73131; June 18, 1973, Filed Robert J. Fetterman, for the petitioner. Buckley D. Sowards, for the respondent. SCOTT MEMORANDUM FINDINGS OF FACT AND OPINION SCOTT, Judge: Respondent determined a deficiency in petitioner's income tax for the calendar year 1968 in the amount of $1,130.93. The issue for decision is whether payments made to petitioner in 1968 by her former husband are includable in her gross income as alimony under the provisions of section *158 71. [1] 2 FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Petitioner, Nancy Cole Miller, resided in Lorain, Ohio at the time her petition in this case was filed. She filed her Federal income tax return for the taxable year 1968 with the district director of internal revenue, Cincinnati, Ohio. On June 17, 1937, petitioner was married to Robert H. Miller. At the time of their marriage neither petitioner nor her husband owned any property. After their marriage, the Millers resided in Elyria, Ohio for about a year. At the time of the marriage, Robert H. Miller was interning as a Doctor of Osteopathy and petitioner was employed earning $17 per week. In 1938 petitioner and Robert H. Miller moved to Roanoke, Virginia, where he entered into the practice of Osteopathy. After they moved to Roanoke, petitioner was not gainfully employed, although she sometimes worked in her husband's office without compensation. In 1941, the couple purchased a home in Roanoke for approximately $5,500, title being taken in both their names. The money for the downpayment came in part from *159 a loan from petitioner's father, part of which was subsequently repaid. This home was sold in 1943 when petitioner and her husband moved to Cleveland, Ohio. In 1945 they purchased a house in Cleveland using the amount received from the sale of the house in Roanoke as a downpayment. In 1950 petitioner and Robert H. Miller purchased the first part of the property they owned at the time of their divorce, using proceeds from the sale of the Cleveland house as a downpayment. This property 3 had a house on it. Title was taken by petitioner and her husband jointly. Later they purchased adjoining acreage, title being taken jointly, and improved the property with a new home and an office. Robert H. Miller conducted his practice from these premises. After 1938 petitioner was not employed at a salary. She and her husband had four children. Petitioner cared for their home and the children and from time to time assisted her husband as a receptionist in his office or as a bookkeeper for no compensation. In 1961, Robert Miller and Nancy Miller sold an easement for highway purposes to certain of the property they had acquired commencing in 1950 to the State of Ohio for $47,350. The *160 mortgage on the portion of the property sold to the State was paid out of the proceeds and the remainder of the proceeds of the sale was divided equally between them. In 1965, petitioner and Robert Miller owned approximately 60 contiguous acres of land. In addition to an office building and a residence near the front of the property, they had built a large residence with a swimming pool at the rear of the land. Their total investment in this property including repairs to some of the buildings was approximately $89,000, and the property was encumbered by a $30,000 mortgage payable at $333 per month. Robert Miller also had outstanding a note for $6,500 to his mother for money he had borrowed to pay for certain of the improvements to the property. 4 On September 15, 1965, petitioner filed suit for divorce in the Court of Common Pleas in Lorain, County, Ohio. In her prayer for relief she asked for temporary and permanent alimony and such other relief as the Court might deem appropriate. On November 4, 1965, petitioner and Robert Miller entered into an agreement entitled, "Memorandum Notes for Anticipated Separation Agreement." This memorandum provides that the husband agrees *161 to pay the wife $52,000; that the jointly owned real estate shall be conveyed to a trustee under an agreement showing that each has an interest therein, the wife's interest to cease when she has been paid $52,000 and the entire interest to vest in the husband; that if any part of the real estate is sold the proceeds shall be applied to the cost of partial release of mortgage and then one-half to the wife to apply on the $52,000 and the other half to the husband who has the right to also apply his portion to the payment of the $52,000 to the wife; that the husband shall pay the wife $100 a week until the amount of the $52,000 remaining after applying payments from the sale of real estate thereto has been paid; that the husband shall maintain life insurance to pay out any balance of the $52,000 due the wife in case of his death; and that in the event of the death of the wife prior to the payment of the full $52,000, the obligation to "pay $100.00 per week for her support shall cease" and her right to any proceeds from sale of the property shall cease.
The terms of this agreement were finalized in a separation agreement signed by the parties on December 3, 1965 and incorporated into *162 the divorce decree entered on December 9, 1965. The separation 5 agreement provided for Robert Miller to support and educate the only one of the Miller children who was still a minor and further provided: 2. During the pendency of the divorce action, the Husband shall pay to the Wife for her support the sum of $125.00 per week. Following the hearing of the divorce case referred to above, and if a divorce is granted in such cause, the Husband shall make alimony payments of $125.00 per week to the Wife, until July 1, 1966. Thereafter, the Husband shall pay the Wife the sum of $100.00 per week. The Husband shall also pay to Harold A. West, Attorney, the sum of $150.00 to apply towards Attorney fees of the Wife in the divorce action referred to above. 3. It is agreed that the Wife's interest in the real estate presently owned by and standing in the joint names of Husband and Wife, is $52,000.00, as an accounting basis, an amount which the Husband accepts and agrees to pay to the Wife, and upon which he shall be given credit for all sums paid to the Wife after the date of the final hearing of the divorce action referred to above. In addition thereto, the Husband shall be *163 given credit for a $1400.00 loan made by the Husband to the Wife to provide funds for the Wife's use in operating her business enterprise. Said $1400.00 and the weekly payments made following the final hearing of the divorce action referred to above, assigned for hearing December 9, 1965, shall be applied to reduce the said sum of $52,000.00. The monthly payments made after the final hearing in the divorce action referred to above shall cease when the total sum of $52,000.00 has been paid by the Husband to the Wife. It is agreed between the parties that the sum of $52,000.00 may be paid as set out in Item 4 below, in addition to the weekly payments. It is further understood and agreed by the parties to this Separation Agreement that if at any time after November 4, 1965, by reason of signing or having signed any note or other accommodation paper as co-signer and accommodation maker for loans made Nancy E. Miller, Wife, the Husband, Robert H. Miller, becomes liable therefor, he, the said Robert H. Miller, shall be credited for all amounts which he pays to discharge that obligation, as payments against the $52,000.00 interest of the Wife in the real estate jointly owned by the parties. *164 4. Both husband and wife agree that all of the present real estate jointly owned by them shall be conveyed to a trustee under an agreement showing that each has an interest in the real estate but that the wife's interest 6 in the real estate shall cease when she has received the sum of Fifty-Two Thousand Dollars ($52,000.00), at which time entire interest in the real estate shall vest solely in the Husband. a. When and if any part of the real estate is sold the proceeds shall be applied (1) to the cost of a partial mortgage release, (27) one-half to the Wife to apply on the stated $52,000.00, and (3) one-half to the Husband who at his discretion may apply his half in further discharge of the said $52,000.00. b. As to the remaining unsatisfied claim of the Wife, being the residue of the $52,000.00, the title to the unsold real estate shall remain in the trustee until further sales sufficient to liquidate the Wife's full $52,000.00. Thereupon the entire title shall vest in the Husband free and clear of all claims of the Wife. 5. The Husband will maintain life insurance designed to pay out any balance owing to the Wife in event of his death before the full $52,000.00 *165 has been paid, so that on the payment to the Wife of the balance still owing to her, the title to the real estate shall vest exclusively in the estate of the Husband. 6. The Husband shall have control of said real estate, maintain it and the improvements thereon, provide for proper insurance and pay the taxes and assessments thereon. He shall be entitled to all the rents and increments arising therefrom. The Husband may negotiate leases and sales of said real estate on such terms as are customarily acceptable; being guided always by the fair and reasonable values thereof. 7. The household goods and other personal property now in the possession, use and control of each of the respective parties shall be and remain their individual property and shall not be divided. 8. It is further agreed by the parties that if at any time for any cause, either shall procure a decree of divorce, the terms and provisions of this Separation Agreement shall be incorporated into and become a part of said divorce decree. 7 In accordance with the above agreement, Robert Miller and petitioner executed a warranty deed on December 3, 1965, conveying their entire interest in the 60 acres *166 of land to the Elyria Savings and Trust Company, as trustee, along with a power of attorney authorizing said trustee to perform all acts necessary or convenient for carrying out the provisions of the separation agreement. On January 20, 1966, petitioner and her husband sent a letter to the Elyria Savings and Trust Company in which they explained that a provision had been inadvertently omitted from the agreement and directed that the following provision be given effect as if written therein: In the event of the death of the wife prior to the payment of the full $52,000.00, the obligation to pay $100.00 per week for her support shall cease and her right to receive anything out of the proceeds of the sale of the property shall cease. Subsequently, part of the property was leased and thereafter sold to a third party. The downpayment of $4,000 was paid to Robert Miller under a letter of instruction by petitioner to the Elyria Savings and Trust Company on September 27, 1969. The remaining proceeds from the sale were on deposit with the trustee at the time of the trial of this case. During the year 1968, petitioner received payments in the amount of $4,900 from Robert Miller. Petitioner *167 did not include any portion of this amount in her income tax return. Respondent in his notice of deficiency increased petitioner's income as reported by the $4,900 with the explanation that the amount was alimony includable in her income under the provisions of section 71. 8 OPINION Petitioner's primary position is that her agreement with her husband which was incorporated into the divorce decree was a property settlement between them and not payments in discharge of an obligation incurred by petitioner's husband because of the marital or family relationship, includable in her income under section 71(a) (1). [2] In the alternative petitioner contends that if the agreement is not one of property settlement, it is one for installment payments discharging an obligation, the principal sum of which is specified in money payable over a period of less than 10 years, and therefore under the provisions of section 71(c) (1) and (2) [3] the payments are not to be treated as periodic payments under 9 the provisions of section 71(a) (1). Payments which arise out of the marital or family relationship and are incurred by a husband in discharge of his marital obligation to his wife are *168 alimony includable in the wife's income under section 71(a). If the wife receives the payments in exchange for her interest in the property owned jointly by the spouses, it represents the proceeds from the sale of an asset and is to be so treated. See Lewis B. Jackson, 54 T.C. 125, 129-130 (1970), and cases cited therein. *169 Petitioner contends that the amount of $52,000 to be paid to her as set forth in the separation agreement 60 acres of land and the structures thereon jointly held by petitioner and her husband at the time of the divorce, relying on such cases as Bernatschke v. United States, 364 F. 2d 400 (Ct. Cls., 1966); Wilma Thompson, 50 T.C. 522 (1968); and Blanche Curtis Newbury, 46 T.C. 690 (1966). Whether these payments are alimony or represent consideration for petitioner's interest in property is a question of fact which must be decided by considering all the circumstances in each case. Labels assigned to payments to a spouse in a separation agreement are 10 not conclusive. Elizabeth H. Bardwell, 38 T.C. 84, 90 (1962), affirmed 318 F. 2d 786 (C.A. 10, 1963). Since respondent's determination in his deficiency notice is presumptively correct, the burden is upon petitioner to show that the payments she received from her former husband were not in the nature of alimony or for her support. Petitioner has failed to carry this burden. On the basis of the record before us, we conclude that the $4,900 which petitioner received *170 in 1968 was a periodic payment for her support in discharge of a legal obligation which was imposed on her husband because of the marital relationship, by a decree incident to a divorce. In reaching this conclusion, we have considered a number of factors indicating the intent of the parties as expressed in a separation agreement. The most important of these factors is the total lack of evidence that petitioner had made any substantial money contribution toward the acquisition of the property in which she claims an interest and the record is lacking in evidence as to the value of the owner's equity in the property title to which was in the joint names of petitioner and her husband. The property was for the most part acquired with the earnings of Robert Miller. Petitioner testified that she assisted her husband in his medical practice and she asserts that she contributed in this way toward acquiring the property. The record shows that her assistance was not on any regular basis, and although her services were helpful to her husband, the record fails to show that the value of her services would warrant a finding that she was, for that reason, entitled to one-half of the property. *171 11 The cases cited by petitioner involving separation agreements in "community property" States such as Texas and Claifornia are distinguishable from this case. In "community property" States, of which Ohio is not one, the wife is deemed to own a one-half interest in all property acquired during the marriage. Here it was incumbent on petitioner to establish that she had a valuable property interest for which she received $52,000 and this she has failed to do. The evidence also fails to show that the sum of $52,000 was related to the value of the assets owned by the parties. The evidence does not establish the value of the jointly owned property. Petitioner's attorney testified that he assumed that the property was worth about $100,000 when he was negotiating the separation agreement. However, no showing was made of the basis for his assumption except that the investment in the property including some repairs was about $89,000. Robert Miller testified that the property was not worth $100,000 but was worth considerably less. He also testified that the property was encumbered with mortgages so that the owner's equity was quite small. The only encumbrance specifically shown *172 in the record is a $30,000 mortgage. The record shows that Robert borrowed $6,500 from his mother which he spent on the property but does not show whether his mother was given a mortgage on the property. The evidence in the record as a whole is insufficient to establish a correlation between the monetary award of $52,000 granted to petitioner in the separation agreement and the value of her purported one-half interest in the property. 12 Finally, petitioner agreed to a provision in the agreement which would terminate the payments at her death. This type of contingency is indicative of an arrangement for support of the wife. See William D. Price, Jr., 49 T.C. 676, 681 (9168), and cases there cited. Based on the record as a whole, we conclude that the periodic payments were intended to be primarily for petitioner's support, and not for a property settlement. Petitioner, in her petition for divorce, specifically asked for alimony, and in our view this is what she received. Petitioner in the alternative contends that if the $52,000 was not a payment for her interest in the jointly held property, then it was an installment payment "discharging a part of an obligation *173 the principal sum of which is * * * specified in the * * * agreement" and since the period of payment is less than 10 years the payments are excluded from the definition of periodic payments under section 71(c). Petitioner cites the provisions of section 1.71-1(d) (3) (i) (a) and (b) [4] of the Income Tax Regulations which provides that in order to be considered periodic payments, installment 13 payments which are to be paid over a period of less than 10 years must be subject to one of the contingencies of remarriage of the wife or death or change in economic conditions of either spouse and be in the nature of alimony or an allowance for support. Petitioner argues that even though the payments were subject to the contingency of death of the wife, they were not in the nature of alimony or an allowance for support. *174 For the same reasons we have concluded that the payments were not payments for a property settlement, we also conclude for the purpose of petitioner's alternative argument that they were in the nature of alimony or an allowance for support. We therefore hold that the $4,900 received by petitioner in 1968 is includable in her gross income for that year. Decision will be entered for respondent. Footnotes
1. All references are to the Internal Revenue Code of 1954. ↩
2. Sec. 71. ALIMONY AND SEPARATE MAINTENANCE PAYMENTS. (a) General Rule. - (1) Decree of divorce or separate maintenance. - If a wife is divorced or legally separated from her husband under a decree of divorce or of separate maintenance, the wife's gross income includes periodic payments (whether or not made at regular intervals) received after such decree in discharge of (or attributable to property transferred, in trust or otherwise, in discharge of) a legal obligation which, because of the marital or family relationship, is imposed on or incurred by the husband under the decree or under a written instrument incident to such divorce or separation. ↩
3. Sec. 71(c) Principal Sum Paid in Installments. - (1) General rule. - For purposes fo subsection (a), installment payments discharging a part of an obligation the principal sum of which is, either in terms of money or property, specified in the decree, instrument, or agreement shall not be treated as periodic payments. (2) Where period for payment is more than 10 years. - If, by the terms of the decree, instrument, or agreement, the principal sum referred to in paragraph (1) is to be paid or may be paid over a period ending more than 10 years from the date of such decree, instrument, or agreement, then (notwithstanding paragraph (1)) the installment payments shall be treated as periodic payments for the purposes of subsection (a), but (in the case of any one taxable year of the wife) only to the extent of 10 percent of the principal sum. For purposes of the preceding sentence, the part of any principal sum which is allocable to a period after the taxable year of the wife in which it is received shall be treated as an installment payment for the taxable year in which it is received. ↩
4. Sec. 1.71-1(d) (3) (i) (a) and (b), Income Tax Regs. provides as follows: (3) (i) Where payments under a decree, instrument, or agreement are to be paid over a period ending 10 years or less from the date of such decree, instrument, or agreement, such payments are not installment payments discharging a part of an obligation the principal sum of which is, in terms of money or property, specified in the decree, instrument, or agreement (and are considered periodic payments for the purposes of section 71 (a)) only if such payments meet the following two conditions: (a) Such payments are subject to any one or more of the contingencies of death of either spouse, remarriage of the wife, or change in the economic status of either spouse, and (b) Such payments are in the nature of alimony or an allowance for support. ↩