George C. WALLACE and Mauzella Wallace, Petitioners-Appellants,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.

Marvin Ansel YOUNG and Glendora May Young, Petitioners-Appellees,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellant.

Nos. 73–1028, 73–1029.

United States Court of Appeals, Tenth Circuit.

Argued and Submitted July 11, 1973.

Decided Sept. 13, 1973.

Reid Robison, Oklahoma City, Okl., for petitioners-appellants.

Robert F. Brandenburg, Jr., Norman, Okl., for petitioners-appellees.

Dennis M. Donohue, Atty., Dept. of Justice (Scott P. Crampton, Asst. Atty. Gen., Meyer Rothwacks and Bennet N. Hollander, Attys., Dept. of Justice, on brief), for the Commissioner of Internal Revenue.

Before PHILLIPS, HILL and DOYLE, Circuit Judges.

ORIE L. PHILLIPS, Circuit Judge.

This is an appeal by George C. Wallace and Mauzella Wallace to review a decision of the Tax Court, 58 T.C. 629.

George and Glendora May Young, formerly Wallace, were married on November 22, 1941. They were divorced by a decree of the District Court of Cleveland County, Oklahoma, on June 25, 1963. At the time of the divorce, they had three minor children. The divorce decree ordered that the custody of such minor children should be awarded to Glendora, with visitation rights in George, and that George should pay Glendora during the minority of each child the sum of $150 per month for the support of such child.

The divorce decree further provided for the division of their property, and that George should pay to Glendora the sum of $41.650 alimony in monthly in-

stallments of $350 each, on or before the 15th day of each succeeding month, until fully paid.

George paid to Glendora the monthly alimony installments of $350 during each month from July 1963 to January 1964, inclusive.

From a period beginning in February 1964 until December 1964, George did not pay the full amount of the alimony installments. In that year, he was twice cited for contempt, and was adjudged guilty of contempt on May 6, 1964. He was purged of that contempt on September 28, 1964. He was again cited for contempt on November 13, 1964. That charge was set for trial on December 10, 1964. On that day, George and Glendora entered into an agreement which was presented to and approved by Honorable Elvin J. Brown, Judge of the District Court of Cleveland County, Oklahoma, by an order entered on December 10, 1964. As we shall hereafter show, such agreement did not in anywise modify the divorce decree; and particularly did not in any way modify the provision of the divorce decree that George should pay Glendora $41,650 alimony in monthly installments of $350 each, the first installment to be paid on or before July 15, 1963, and the remaining installments on or before the 15th day of each succeeding month thereafter until the full amount of such alimony was paid; and that the sole effect of such agreement was to estop Glendora from enforcing by contempt proceedings the payment by George of the unpaid amount of any monthly installments due her for alimony under the provisions of the divorce decree, if he paid her $250 on January 1, 1965, and that amount in each succeeding month thereafter, until the youngest of such minor children, Darrell, became emancipated or reached his majority; and if he paid her $400 in each succeeding month thereafter, until the balance of the unpaid alimony he owed her on January 1, 1965, which was $38,050, was fully paid.

Beginning in January 1965, George paid Glendora $250 per month on the al-imony until Darrell joined the armed forces of the United States about January 22, 1969, and thereafter George paid Glendora $400 per month on the alimony up to the date of the trial in the Tax Court on February 28, 1972. If he continued to make such payments of $400 per month to and including May 1974, he would have paid the full amount of the $38,050 alimony in approximately 114 months (114.166 months). Had he paid the full amount of the alimony in monthly installments of $350 per month, as provided in the divorce decree, he would have completed the payment of the $41,650 in 119 months. However, between July 1963 and December 1964, a period of 18 months, George only paid $3,600 on the alimony. Eighteen months added to 114.166 months equals 132.166 months, which is more than 10 years.

In 1968, when Glendora learned that George was taking deductions on his federal income tax returns of the payments made by him to her, she filed a motion to clarify the order of approval of the alimony agreement.

After the taking of testimony and the filing of briefs, Judge Brown held that he was without jurisdiction to modify the provisions of the divorce decree.

On appeal from that order, the Supreme Court of Oklahoma held that the state district court did have jurisdiction to modify the divorce decree, and remanded the case with directions to grant a rehearing.

On remand, the matter came on for rehearing before Judge Brown. Both parties appeared in person and by their respective counsel and stipulated that there was no new evidence, and that Judge Brown could reconsider all the evidence previously introduced.

At such rehearing, neither party requested the court to hold that the provision of the decree requiring George to pay Glendora as alimony $41,650 in monthly installments of $350 each on or before the 15th day of each succeeding month was in anywise modified by the

alimony agreement; George specifically agreed that he remained obligated to pay the alimony award in monthly installments of $350 per month on or before the 15th day of each succeeding month; and Glendora specifically stated that while she knew the alimony was accumulating at the rate of $350 per month, she agreed not to bring contempt proceedings against George if he made the alimony payments at the rate of $250 per month until Darrell's "child support stopped," and thereafter, at the rate of $400 per month. At the conclusion of the hearing Judge Brown prepared and filed a memorandum. A copy of the part here pertinent is set out in Note 1 hereto.[1] In such part he set forth the facts we have just recited, and stated: "Therefore, the Court concludes that it was not the intention of the parties or of the Court" by such agreement "to modify the alimony award contained in the * * * Divorce Decree * * * but that it was the announced intention of the parties and Order of the Court to estop the plaintiff (Glendora) from enforcing the collection through contempt" proceedings "of more than $250.00 per month until" the "majority or emancipation" of Darrell, and thereafter "$400.00 per month."

Thus, it will be seen that Judge Brown concluded that it was not the intent of the parties or the court to modify the alimony award of the original divorce decree. Judge Brown caused an order to that effect to be duly entered. No appeal was taken from that order by either party, and it is final and binding on both parties to the alimony agreement.

After such order was entered, both George and Glendora filed a motion for the allowance of attorney's fees and costs. The court refused to allow George the attorney's fees or costs and an order was entered accordingly. On George's appeal from that order, the Court of Appeals of the State of Oklahoma held that George was the prevailing party on the first appeal and was entitled to recover his costs on that appeal. It held, however, that although the matter of the allowance of attorney's fees arose in a divorce proceeding, it was within the discretion of the trial court, and that the court in disallowing attorney's fees did not abuse its discretion. In such appeal involving the allowance of attorney's fees and costs, George undertook to have the court pass on the question of whether the alimony agreement modified the divorce decree with respect to alimony.

---

1. "(1) The voluntary appearance of the parties and their consent for the Court to hear the matter conferred jurisdiction upon the Court to modify their 1963 Decree.

"(2) However, neither party requested the Court in any way, manner, method or detail, to modify that Decree or its alimony award, nothwithstanding [sic] any implication to the contrary from the ineptly worded 'Alimony Agreement' of 12-10-64.

"(3)   The parties appeared and asked that their agreement be approved only because of the financial pressures produced by repetitive contempt citations.

"(4) Defendant specifically agreed that his alimony obligation continued to accrue at the rate of $350.00 per month, but he acknowledged understanding that if the Court approved their Agreement, he would only have to pay $250.00 per month until his child support stopped, at which time he would start paying $400.00 per month, which was more than required under the 1963 Decree.

"(5) Plaintiff specifically stated that while she knew her alimony was accumulating at the rate of $350.00 per month, she was agreeing to give up any right to coerce payment through contempt proceedings or execution of more than $250.00 per month until the child support stopped, when she could expect $400.00 per month toward retirement of the accrued and accruing alimony due her.

"Therefore, the Court concludes that it was not the intention of the parties or of the Court to modify the alimony award contained in the 1963 Divorce Decree of these parties, but that it was the announced intention of the parties and Order of the Court to estop the plaintiff from enforcing the collection through contempt of more than $250.00 per month until majority or emancipation of the child, when defendant would pay $400.00 per month. While this appears in retrospect to be a poor method of accomplishing the desired result, such is what happened."

The court refused to do so on the ground that that question was not an issue involved in the appeal in the matter of the allowance of attorney's fees and costs.

The decision of the Court of Appeals of Oklahoma was not reviewed by the Supreme Court of Oklahoma on writ of certiorari, and on July 26, 1973, the Supreme Court of Oklahoma issued its mandate to the District Court of Cleveland County, commanding it to show of record in such District Court the decision of the said Court of Appeals. Thus, it will be seen that the decision of the Court of Appeals has become final.[2]

In their income tax returns for the taxable years 1966 and 1967, George and Mauzella claimed as deductions the amounts paid by George to Glendora in those years. Glendora and Marvin, in their income tax returns for the years 1966 and 1967, did not include as income the amounts so paid by George in those years.

The question presented is whether such payments made by George were installment payments or periodic payments. If they were made under the provisions of the divorce decree, they were installment payments, and were not deductible by George and Mauzella, and were not includible in the income of Glendora and Marvin. On the other hand, if they were periodic payments made by George to Glendora, they were deductible by George, and Glendora should have included them in her tax returns for those years.

As we have heretofore stated, Judge Brown, on the rehearing after the remand by the Supreme Court of Oklahoma in the first appeal, in his memorandum set out in Note 1, clearly and explicitly held that it was not the intent of the parties to modify the provisions of the divorce decree with respect to alimony payments.

Darrell joined the armed forces of the United States on January 22, 1969. Beginning in January 1965, up to the date of the trial in the Tax Court on February 28, 1972, George paid Glendora $250 per month, to and including January 1969, and thereafter, $400 per month.

For the years 1966 and 1967, the Commissioner entered statutory notices of deficiencies both to George and Glendora, in which he took inconsistent positions. He held in the deficiency notice to George that the alimony payments made to Glendora were not periodic payments, and were not deductible by George and Mauzella. In the deficiency notice to Glendora and Marvin, he took the position that the alimony payments made by George to Glendora were not installment payments and should have been included in the gross income in their income tax returns for 1966 and 1967.

George and Mauzella appealed from the decision of the Commissioner for the deficiency declared against them, and Glendora and Marvin appealed from the deficiency declared against them. The appeals were consolidated for hearing in the Tax Court. It held that such payments made by George to Glendora were installment payments, and were not deductible by him and Mauzella in their tax returns for 1966 and 1967, and that such payments were not periodic payments and should not be taxed against Glendora and Marvin in those years.

Counsel for George and Mauzella, disregarding the fact that Judge Brown by a final order had adjudged that the alimony agreement in nowise modified the provisions of the divorce decree with respect to alimony and the payment thereof, and that such provisions remained in full force and effect; and the further fact that we must therefore look to the provisions of the divorce decree to determine whether the alimony payments made by George to Glendora, both before and after January 1965, were install-

2. A copy of such mandate duly certified was furnished us by counsel for Glendora Wallace Young on August 8, 1973.

ment payments, made the following contention:

They assert that had Darrell died before he was emancipated or reached the age of 21, the provision for the payment of $400 per month, in order to estop Glendora from citing George for contempt, would never have come into effect, and that the payment of $250 per month by George, in order to estop Glendora from citing him for contempt, would not have completed the payment of the unpaid balance of the alimony on January 1, 1965, of $38,050, until more than 10 years after January 1, 1965. The provisions of the alimony agreement with respect to payments, read literally and out of context and without consideration of the surrounding facts and circumstances, afford some basis for such construction of the alimony agreement. But, read in the light of the entire agreement, the provision in the divorce decree that George would pay Glendora $150 per month for the support of each of the three children, of whom Darrell was the youngest; the statements made by George and Glendora at the rehearing, and particularly Glendora's statement that "he would only have to pay $250 per month until his child support stopped," at which time he would start paying $400 per month, negate the contention of counsel for George and Mauzella, and show that the parties intended by the provisions of the alimony agreement that George should begin the payment of $400 per month whenever his obligation to pay Glendora $150 per month for the support of Darrell ceased for any reason.

However, we are of the opinion that the contention made by counsel for George and Mauzella is wholly immaterial to a proper decision in the instant case. To hold otherwise would accord George the right to modify the divorce decree by reason of the provisions in the alimony agreement. But, as we have heretofore said, Judge Brown in his memorandum, set out in Note 1, concluded that the alimony agreement did not change or modify in any way the provisions of the divorce decree with respect

to alimony or the payment thereof, and entered a final order giving effect to such conclusion. Hence, George had no power to change such provisions in the divorce decree.

We agree with the holding of the Tax Court in the case of Grabowski v. Commissioner, 21 T.C.M. 249, 251, where, in construing 26 U.S.C.A. § 71(c)(2), it said:

"The word 'may' in the phrase 'may be paid' relates to the decree and it is to be given its ordinary permissive meaning as distinguished from ability, possibility, or what is likely to occur. The question is whether the decree by its terms permits installment payments of the principal sum so that the husband would be complying with the terms of the decree if he extended the payments beyond the 10 year period. If it does not, then the installment payments are not includible in the wife's income, even though it appears uncertain whether the husband will, or will be able to, make the payments within the 10 year period. In deciding whether the principal sum 'may be paid' within 10 years, the possibility of noncompliance with the terms of the decree is not recognized. Robert D. Stecker, * * * [31 T.C. 749 (1959)]. In short, the issue is whether the decree grants Felix [the husband] the right to extend the installment payments on the principal sum of $23,500 beyond the 10 year period."

We think the above-quoted language of the Tax Court is apposite in the instant case.

Under the alimony agreement, George was required to pay not less than $250 per month from January 1, 1965, to January 22, 1969, and $400 per month thereafter until the alimony was fully paid, to avoid being cited for contempt for not paying $350 each month from the date of the divorce decree. However, under the terms of the divorce decree, which were in nowise changed by the alimony agreement, he was required to pay $350 each month from the date of such decree until the alimony was fully paid. Hence, he was required by the

terms of the divorce decree to pay the alimony in full within 119 months from the date of the divorce decree, and he "would" not "be complying with the terms of the" divorce "decree if he extended the payments beyond the 10 year period," which he had no right to do. And, if instead of paying Glendora $250 per month during the period from January 1, 1965, to January 22, 1969, he had paid her $350 per month, as he was required to do by the terms of the divorce decree, and $400 per month after the latter date, which he had to do to avoid being cited for contempt, he would have paid the alimony in full in 119.25 months, or within less than 10 years from the date of the decree.

We hold that all of the payments made by George, both before and after January 1, 1965, were installment payments made under the provisions of the divorce decree, and that George and Mauzella were not entitled to deduct the payments made by George to Glendora in 1966 and 1967 from their gross income for those years.

The decision of the Tax Court is affirmed.