JOHN W. HERRICK AND JUDY JONES HERRICK, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent.
Herrick v. Commissioner
Docket No. 6242-75.
United States Tax Court
T.C. Memo 1977-171; 1977 Tax Ct. Memo LEXIS 271; 36 T.C.M. (CCH) 708; T.C.M. (RIA) 770171; June 7, 1977, Filed *271 Held, petitioner has failed to prove the worthlessness of SWD corporation as of December 31, 1972. Held further, the possibility of petitioner's noncompliance with the terms of a divorce judgment, thereby extending his installment payments, to his former wife, over a period ending more than 10 years from the date of the decree, is not to be considered in determining whether said installment payments shall be treated as periodic payments under sec. 71(c)(2). Heldfurther, petitioner has failed to substantiate travel and entertainment expenses in excess of the amount allowed by respondent. Heldfurther,sec. 6653(a) negligence penalty sustained. John W. Herrick, pro se. Richard D. Ames, for the respondent. STERRETT
MEMORANDUM FINDINGS OF FACT AND OPINION STERRETT, Judge: Respondent determined a deficiency in, and addition to under section 6653(a), I.R.C. 1954, petitioners' Federal income tax for the calendar year 1972 in the amount of $52,278.83 and $2,613.94, respectively. Petitioners have conceded certain issues [1] and the following remain for our decision: (1) Whether petitioners' stock in SWD corporation became worthless during the year at issue. (2) Whether John W. Herrick's *272 payment in 1972 to his former spouse, Mary M. Herrick, in the amount of $8,000 is an allowable alimony deduction to petitioner under section 215. (3) Whether petitioners are entitled to travel and entertainment expense deductions in the amount of $20,000 for 1972. (4) Whether respondent has properly assessed a section 6653(a) penalty on petitioners. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts, together with the exhibits attached thereto, are incorporated herein by this reference. Petitioners, John W. and Judy Jones Herrick, husband and wife, resided in Fort Worth, Tarrant County, Texas at the time the petition herein was filed. Their joint Federal income tax return for the calendar year 1972 was filed with the director of the internal *273 revenue service center Austin, Texas. John W. Herrick (hereinafter petitioner) is a practicing attorney licensed in the State of Texas with his office in Fort Worth, Texas. His practice of law is largely devoted to the handling of workmen's compensation and personal injury cases in which he represents the plaintiff on a contingent fee basis. Successful in approximately 95 percent of the cases he accepted, his net income for years 1967 through 1970 was $58,503; $62,928; $96,168; and $102,577, respectively. In 1970 petitioner purchased $50,000 of capital stock in SWD corporation[2] (SWD). SWD was engaged in the manufacture of coin dispensing machines which gave change from 1 cent to 99 cents. It had entered into a contract with Sweda International (Sweda) to make a coin dispenser that fit into a cash register so that the SWD dispenser automatically paid out the amount of change commanded by the Sweda cash register. In 1970 it appeared, to SWD management, that gross profits from the SWD-Sweda contract would approximate $400,000 to $500,000. In 1972 Sweda stopped purchasing SWD's dispenser and, as 99 percent of SWD's sales were with Sweda, corporate operations for its fiscal year *274 ended June 30, 1972, per its income tax return, showed a loss of $25,251. [3] At the beginning of 1972 SWD had, approximately, 16 to 18 full-time employees while at the end of 1972 and through 1973 it had 4 or 5 employees and during 1974, 3 or 4 employees. During 1975 SWD employed 1 full-time engineer and 3 or 4 part-time employees. These employees attempted to sell machines and generate business in new sales outlets. Scott Daly, president and a principal shareholder of SWD, aware of the financial and business circumstances of SWD, invested in 1973 and through 1975 additional money in SWD in the belief that the corporation was salvageable and could be made profitable. On schedule E of his 1972 return petitioner deducted his investment of $50,000 in SWD stock as a loss of a small business corporation. Respondent in his notice of deficiency, dated April 8, 1975, disallowed this deduction. On February 28, 1972, Judge W.A. Hughes, Jr. of Domestic Relations Court Number 3, Tarrant County, *275 Texas rendered a judgment granting a divorce between petitioner and his former spouse, Mary M. Herrick. The judgment of divorce provided, in part, as follows: * * * [That] Plaintiff Mary M. Herrick do have and recover of and from the Defendant John W. Herrick the sum of EIGHTY THOUSAND ($80,000.00) DOLLARS, payable in ten annual installments of EIGHT THOUSAND ($8,000.00) DOLLARS each; the first installment due and payable on or before the 1st day of July, 1972, with a like sum of EIGHT THOUSAND ($8,000.00) DOLLARS becoming due and payable on or before the 1st day of July each year thereafter until fully paid off and satisfied at no interest except as hereinafter provided. In the event John W. Herrick defaults in any of the installment payments when due, the entire remaining unpaid balance of the original EIGHTY THOUSAND ($80,000) DOLLARS shall draw interest at the rate of six per cent (6%) until said past due installment payment has been made current with Mary M. Herrick, and Mary M. Herrick is hereby adjudged and decreed to have a special lien upon all legal fees received by John W. Herrick from the date such past due installment shall have become due, with such lien continuing *276 until the past due installment, together with interest on the remaining unpaid balance as provided above, shall have been paid in full. Judge Hughes, prior to granting the divorce judgment, wrote to both parties stating, in pertinent part, as follows: * * * I further find that an equitable division of the property of the parties would best be served by awarding Mary Herrick a judgment of $80,000 to be paid in $8,000 annual installments, the first one being due on the 1st day of July, 1972, with the same anniversary date for the other nine installments. Also Mrs. Herrick should have all household goods and personal property in her possession, the 1969 Dodge Station Wagon, and two Texas Stadium bonds. Mr. Herrick shall have all of the rest and residue of the said community estate, subject to indebtedness thereon * * *.
Petitioner on his 1972 return claimed an itemized deduction for $8,000 paid to his former wife pursuant to the terms of the divorce judgment. Respondent, in his notice of deficiency disallowed such deduction. In 1972 petitioner ventured to Europe for, approximately, four to five weeks to organize manufacturing facilities and sales outlets for Redi-Smoke, a cooker which *277 gives food a distinctive flavor. Additionally he spent four weeks in California promoting this cooker. On schedule C of his 1972 return petitioner deducted travel expenses of $24,186.47 of which $20,000 represented his expenses in Europe and California promoting Redi-Smoke. Petitioner does not have any substantiating records, documentation or receipts for this $20,000 of expenditure and, accordingly, respondent disallowed such amount. OPINION 1. SWD Corporation stock loss
Petitioner contends on brief that it is established, without question and without dispute, that his $50,000 investment in SWD became worthless by the end of the involved tax year. Accordingly as petitioner was suffering from a "congenital disease which can be best described as 'dementia investmentitis,'" [4] *280 he should be "entitled to relief from the Commissioner's total lack of understanding of that disease" to wit, ordinary loss rather than capital loss treatment. Obviously, respondent does not agree and neither do we. Petitioner has the burden to establish that he sustained a deductible worthless stock loss for the year in issue. Boehm v. Commissioner,326 U.S. 287 (1945) citing Burnet v. Houston,283 U.S. 223 (1931). *278 In Morton v. Commissioner,38 B.T.A. 1270, 1278-9 (1938), affd. 112 F. 2d 320 (7th Cir. 1940), the Board clearly set forth the standards and guidelines for a determination of worthlessness as follows: * * * [a] loss by reason of the worthlessness of stock must be deducted in the year in which the stock becomes worthless and the loss is sustained, that stock may not be considered as worthless even when having no liquidating value if there is a reasonable hope and expectation that it will become valuable at some future time, and that such hope and expectation may be foreclosed by the happening of certain events such as the bankruptcy, cessation from doing business, or liquidation of the corporation, or the appointment of a receiver for it. Such events are called "identifiable" in that they are likely to be immediately known by everyone having an interest by way of stockholdings or otherwise in the affairs of the corporation; but, regardless of the adjective used to describe them, they are important for tax purposes because they limit or destroy the potential value of stock. The ultimate value of stock, and conversely its worthlessness, will depend not only on its current liquidating *279 value, but also on what value it may acquire in the future through the foreseeable operations of the corporation. Both factors of value must be wiped out before we can definitely fix the loss. If the assets of the corporation exceed its liabilities, the stock has a liquidating value. If its assets are less than its liabilities but there is a reasonable hope and expectation that the assets will exceed the liabilities of the corporation in the future, its stock, while having no liquidating value, has a potential value and cannot be said to be worthless. The loss of potential value, if it exists, can be established ordinarily with satisfaction only by some "identifiable event" in the corporation's life which puts an end to such hope and expectation. Applying these standards to the facts herein, it is incumbent upon petitioner to prove both loss of liquidating and potential value of SWD as of December 31, 1972. In meeting this criterion, a relevant "identifiable event" in SWD's life also must be shown. Although there was some testimony by SWD's president, Scott Daly, that SWD had no liquidation value as of December 31, 1972, Daly testified that, aware of the financial and business conditions of SWD, he contributed additional funds to the corporation during 1973 through 1975. It was his belief that SWD could be made profitable. Also, no "identifiable event" has been shown by petitioner to destroy the potential value of SWD stock. In short, while SWD stock sustained a severe shrinkage in value during 1972, the record conclusively shows that petitioner has failed to meet his burden of establishing the worthlessness of SWD stock *281 as of December 31, 1972. 2. Petitioner's payment to his former spouse
Pursuant to the terms of the February 28, 1972 divorce judgment petitioner paid, in 1972, his former spouse $8,000, the first of 10 required annual installment payments, and deducted said amount as alimony pursuant to sections 215, 71(a) and (c). [5] *282 *283 *284 Assuming, arguendo, that such payment constituted support to his former spouse and was not a division of the community assets, [6] it was not a "periodic payment" for purposes of section 71(a). Petitioner argues that under section 71(c)(2) installment payments shall be treated as periodic payments if the principal sum "is to be paid or may be paid over a period ending more than 10 years from the date of the decree." He recognizes that, on its face, the installment provision in the judgment is 7 months short of the required 10 year period. However, *285 he contends that the divorce judgment provided Mary Herrick, in the event of default in payment by petitioner, additional remedies [7] and therefore said installment payments may be paid over a period ending more than 10 years from the date of the decree. We do not agree. As we stated in Stecker v. Commissioner,31 T.C. 749, 752 (1959): The possibility is always present that a divorced husband may not comply with the terms of a separation agreement and that, because of such noncompliance, a principal sum payable, by the terms of the agreement, within the 10-year period may be paid after its expiration.The statute does not, however, recognize the possibility of noncompliance as a factor to be taken into consideration in determining the period during which payments of the principal sum are to be made. See also Price v. Commissioner,49 T.C. 676 (1968) and Young v. Commissioner,58 T.C. 629 (1972) affd. 485 F. 2d 422 (10th Cir. 1973). Furthermore, we note that section 1.71-1(d)(3)(i), Income Tax Regs., treats payments as periodic payments even though the stated period for payment of the principal *286 sum is 10 years or less if the payment is subject to (1) death of either spouse, (2) remarriage of the wife, or (3) change in economic status of either spouse. These contingencies may be either imposed by local law or set forth in the divorce decree, Price v. Commissioner,supra. Since Texas law considers alimony against public policy and the terms of the divorce decree do not provide for any of the aforenoted contingencies, we conclude that such installment payment, made by petitioner in 1972, does not qualify as a periodic payment under section 71 and the $8,000 deduction is denied. 3. Travel and entertainment expenses
Petitioner, on brief, recognizes that his deduction for $20,000 of expenses incurred abroad and in California over a 2-month period promoting the Redi-Smoke cooker is tenuous. He admits that there are no substantiating records, documentation, or receipts for these expenditures; he has not attempted to reconstruct his records [8] and places the blame on his secretary, "who somehow misplaced the file." He states that "all that can be said is that the money was sure spent in going around the various places in Europe" and California promoting the Redi-Smoke cooker. However, *287 the law is well settled that no deduction, under section 162 or 212, shall be allowed for any expenditure for travel or entertainment unless the taxpayer substantiates the following elements for each such expenditure: (1) amount, (2) time and place of travel or entertainment, (3) business purpose, and (4) the business relationship to taxpayer of persons entertained. Section 274(d); section 1.274-5(b)(1) and 5(b)(2), Income Tax Regs. Petitioner has made no attempt to substantiate these expenditures except by his own uncorroborated testimony and section 274(d) requires corroborating evidence. We hold that petitioner is not entitled to a travel expense deduction, for 1972, in excess of that amount allowed by respondent. The final issue for our decision is whether respondent correctly asserted a section 6653(a) penalty. The penalty was imposed and properly assessed in the notice of deficiency and therefore the burden of proof is upon petitioner to show respondent's determination to be *288 in error. Rule 142(a), Tax Court Rules of Practice and Procedure. Inasmuch as petitioner presented no evidence concerning this issue, and in fact admitted that he did not even know what some of the disallowed expenses related to, we have no choice but to uphold the negligence penalty under section 6653(a). Decision will be entered for the Respondent. Footnotes
1. Petitioners have stipulated that the capital stock of Southwest Exploration, Inc. was not worthless as of December 31, 1972 and therefore they were not entitled to a loss deduction. Furthermore, petitioners have conceded, on brief, that respondent did not err in disallowing $3,046.04 of "other expenses" and $11,000 of legal and professional expenses deducted on their 1972 income tax return.↩
2. The parties are in agreement that this was not section 1244 stock. ↩
3. We note that SWD's income tax return for fiscal year ended June 30, 1973 showed net operating losses for each year of its existence.↩
4. Petitioner defines this disorder as a "pitiful lack of investment acumen." As a basis for being certified a dementia investmentitis victim, petitioner testified that each and every investment he made, in his lifetime (a total of 13), became worthless. On brief he states that his "only reluctance in documenting in detail his claim to dementia investmentitis is his fear that such documentation, if incorporated in this Honorable Court's opinion, will set a standard so high that future taxpayers suffering from the same disability in a lesser degree, but otherwise worthy, will not be able to qualify." While personal experience permits us to relate sympathetically to petitioner's suffering we are unable, under the law, to provide relief.
5. SEC. 215. ALIMONY, ETC., PAYMENTS. (a) General Rule.--In the case of a husband described in section 71, there shall be allowed as a deduction amounts includible under section 71 in the gross income of his wife, payment of which is made within the husband's taxable year. No deduction shall be allowed under the preceding sentence with respect to any payment if, by reason of section 71(d) or 682, the amount thereof is not includible in the husband's gross income. SEC. 71. ALIMONY AND SEPARATE MAINTENANCE PAYMENTS. (a) General Rule.-- (1) Decree of Divorce or Separate Maintenance.--If a wife is divorced or legally separated from her husband under a decree of divorce or of separate maintenance, the wife's gross income includes periodic payments (whether or not made at regular intervals) received after such decree in discharge of (or attributable to property transferred, in trust or otherwise, in discharge of) a legal obligation which, because of the marital or family relationship, is imposed on or incurred by the husband under the decree or under a written instrument incident to such divorce or separation. (2) Written Separation Agreement.--If a wife is separated from her husband and there is a written separation agreement executed after the date of the enactment of this title, the wife's gross income includes periodic payments (whether or not made at regular intervals) received after such agreement is executed which are made under such agreement and because of the marital or family relationship (or which are attributable to property transferred, in trust or otherwise, under such agreement and because of such relationship). This paragraph shall not apply if the husband and wife make a single return jointly. (3) Decree for Support.--If a wife is separated from her husband, the wife's gross income includes periodic payments (whether or not made at regular intervals) received by her after the date of the enactment of this title from her husband under a decree entered after March 1, 1954, requiring the husband to make the payments for her support or maintenance. This paragraph shall not apply if the husband and wife make a single return jointly. * * * (c) Principal Sum Paid in Installments.-- (1) General Rule.--For purposes of subsection (a), installment payments discharging a part of an obligation the principal sum of which is, either in terms of money or property, specified in the decree, instrument, or agreement shall not be treated as periodic payments. (2) Where Period for Payment is More Than 10 Years.-- If, by the terms of the decree, instrument, or agreement, the principal sum referred to in paragraph (1) is to be paid or may be paid over a period ending more than 10 years from the date of such decree, instrument, or agreement, then (notwithstanding paragraph (1)) the installment payments shall be treated as periodic payments for purposes of subsection (a), but (in the case of any one taxable year of the wife) only to the extent of 10 percent of the principal sum. For purposes of the preceding sentence, the part of any principal sum which is allocable to a period after the taxable year of the wife in which it is received shall be treated as an installment payment for the taxable year in which it is received. 6. The statutes and public policy of Texas "do not sanction alimony for the wife after a judgment of divorce has been entered." Francis v. Francis,412 S.W. 2d 29, 32↩ (Tex., 1967). However petitioner argues that the community estate was insolvent and that the Domestic Relations Court ordered him to pay his spouse out of future earnings from his law practice. He contends these were, clearly, alimony payments notwithstanding Judge Hughes' statement, in his letter of February 4, 1972 to the parties, that "an equitable division of the property of the parties would best be served by awarding Mary Herrick a judgment of $80,000 to be paid in $8,000 annual installments."
7. A lien upon petitioner's legal fee income and six percent interest on any past due installments.↩
8. See Sec. 1.274-5(c)(5)↩ allowing petitioner a right to substantiate a deduction by reasonable reconstruction of his expenditures if the loss of his records was through circumstances beyond his control.